STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. ALEX-ANDER COHEN AND SAMUEL GUIDOTTI, PLAINTIFFS IN ERROR.

Submitted January 28, 1927—Decided September 28, 1929.

Before Justices KALISCH, KATZENBACH and LLOYD.

For the plaintiffs in error, *Harry Heher*.

For the defendant in error, *William H. Geraghty*, prosecutor of the pleas, and *Walter G. Cougle*, assistant prosecutor of the pleas.

The opinion of the court was delivered by

KALISCH, J. The plaintiffs in error, Alexander Cohen and Samuel Guidotti, were convicted in the Mercer County Court of General Quarter Sessions, upon an indictment containing two counts, charging them and one Peter Lewis, jointly, by the first count, with larceny of "one thousand gallons of alcohol of the value of thirty seven hundred and fifty dollars, of the goods and chattels of one Thomas Davis," and in the second count, with receiving the stolen goods and chattels well knowing them to have been feloniously stolen, &c.

According to the record, the verdict against each was guilty in the manner and form, as charged in the indictment. Lewis, the other defendant, was not tried, because, at the time of the trial, he was not within the jurisdiction of the court. The indictment, as found by the grand jury, charged that the goods and chattels alleged to have been stolen and received were the property of Thomas Davis.

At the trial it appeared from the testimony of one Jacob Moorestine, who was produced by the state, on its behalf, as a witness, that he was the owner of the property in question, whereupon it was moved by counsel on behalf of the state for leave to amend the indictment, viz., by striking out the name of Thomas Davis, as such owner, from the indictment, and to substitute in place thereof the name of Jacob Moorestine, as the owner of the goods and chattels charged to have been stolen and received by the plaintiffs in error; to the granting of which motion counsel of plaintiffs in error objected, but the objection was overruled, and the trial judge directed the indictment to be amended, as requested, to which judicial action counsel of defendants duly excepted.

At the close of the state's case, counsel of plaintiffs in error moved for a direction of a verdict for each of the accused upon

substantially these grounds. (1) That the trial judge was without authority to amend the indictment. (2) That the goods and chattels alleged to have been stolen were contraband liquor, and therefore could not be the subject of larceny.

The trial judge refused to grant the motion, to which refusal counsel for plaintiffs in error duly excepted. At the close of the entire case a motion for a direction of the verdict on behalf of the accused was renewed on the same ground, which motion was denied, and to which denial an exception was taken.

The two grounds of appeal relied upon for a reversal of the judgment, and argued before us by counsel of plaintiffs in error, in the brief, are as follows: "(1) The alcohol alleged to have been stolen was contraband in which no property rights existed, and in the circumstances it could not be the subject of larceny or receiving." "(2) The trial court erred in permitting an amendment of the indictment by the striking therefrom the name of the person alleged by the grand jury to be the owner of the subject-matter of the alleged larceny or receiving, and substituting therefor the name of another."

Taking up for consideration the first ground of appeal, that the trial judge erred in refusing to direct a verdict for the defendants because the subject-matter of the alleged theft was alcohol, and as that was contraband, no right of property could exist therein, and hence, it could not be the subject of larceny or receiving.

We do not deem this contention to be sound. The question raised is neither a new nor novel one. In *Commonwealth* v. *Coffee*, 9 *Gray* (*Mass.*) 139, on an indictment for larceny of six gallons of brandy by the accused, it was held, that though the liquor was purchased in the state in violation of the statute of 1855, and was intended by the purchaser to be sold in violation of that act, and was being transported from place to place in violation of said act, nevertheless it was the subject of larceny.

The question as to whether or not liquor illegally possessed under the Volstead act could be made the subject of larceny, was elaborately discussed in *People* v. *Otis* (*Court of Appeals*

*of New York), 235 N. Y.* 421; 139 *N. E. Rep.* 562, in an opinion by Judge Andrews. In the cited case the appellant was indicted and convicted of petty larceny for stealing a quantity of whiskey unlawfully possessed under the provisions of the National Prohibition act (41 *Stat.* 305). There, as here, the question was raised, whether under the National Prohibition act there could be any property right in liquor illegally possessed, so as to be the subject of larceny, in view of the fact that the statute (41 *Stat.* 315, *tit.* 2, § 25) provides, that "no property rights shall exist" in liquor illegally possessed. In considering this phase of the case, the learned judge said: "There can be no larceny of property not subject to ownership. How, then, it is asked, may there be larceny of such liquor? If we give the broadest possible construction to these words, there is no answer; for it must be conceded that to enforce the recent amendment to the constitution, congress may declare that to steal liquor shall no longer be a crime. It might think it wise to license theft so as to discourage intoxication. We should not, however, readily impute to it such a design. *Commonwealth* v. *Rourke,* 10 *Cush. (Mass.)* 397. Certainly the earlier declaration of the same statute (section 3) that its provisions are to be "liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented" gives no indication of such a purpose. To so construe the language of section 25 would be to encourage the transportation, distribution and consumption of liquor by the thief."

"The truth is that sections 25, 26 and 27 are but three of the number of sections providing remedies by which the statute may be more conveniently enforced. A separate sentence or clause is not to be wrenched from its context. The sections are to be construed as a whole in the light of their general object. We start with the presumption that the possession of liquor is illegal. Section 33. Such liquor may be seized. Search warrants may be issued, but not with regard to private dwellings, with some exceptions. If being transported the officer making the seizure shall also take possession of the vehicle in which it is found. All this is to be followed

by an orderly procedure in court. The court shall dispose of the liquor if it finds it was unlawfully possessed. The court may order it destroyed, or may order it to be delivered to the government. The court is to deal with the vehicle in which the liquor may have been transported. Mingled as it is with these provisions, the clause as to property rights was clearly intended solely to protect government officials in the exercise of their duties."

And then again the learned judge said: "However broad the language used, its effect should be confined to the purposes for which it was intended. Property rights in such liquor are not forever ended. They pass to the government. They pass from it to a purchaser. Section 25 is merely a police regulation, adapted to aid the enforcement of the prohibition law and to be applied with that end in view. The intention of congress went no further." See *Blakemore on Prohibition*, pages 279, 280 (Ed. of 1923).

In *Lout* v. *State*, 244 *Pac. Rep.* 820, the court said: "The defendants further contend that instruction number 15 is in conflict with the eighteenth amendment and with our own state constitution which provides that no property rights are attached to liquor illegally possessed, such as might constitute a basis for larceny or robbery." In that case the court further said: "The weight of authority is to the contrary," and cites numerous cases in support of that statement.

In *State* v. *Friedman*, 98 *N. J. L.* 577, our Court of Errors and Appeals affirmed the judgment of the Supreme Court, in which case one of the points relied on for reversal was, that the trial judge erroneously charged the jury that the whiskey involved was property, under the Volstead act.

In *Arner* v. *State*, 197 *Pac. Rep.* 710, the court said: "It is not the policy of the law to encourage culpable defenses to criminal actions. It is the duty of this court to so construe the criminal laws as to effectuate their purposes, and to give force and effect to evident legislative intent. It is the business of the state, through its duly constituted peace officers to bring such action as the law prescribes against contraband property and its users, and it is not the privilege of the high-

wayman to hold up at the point of a gun the possessors of contraband property and take it away from them by force, nor did the legislature so intend by merely providing that such possessor should have no property right in the property when unlawfully kept."

In *Hobach* v. *United States,* 284 *Fed. Rep.* 529, the court said: "There is nothing in the point that contraband liquor cannot be the subject of larceny or embezzlement. The trend of the authorities to the contrary is unbroken. Many of them are cited in 20 *C. J.* 418." See also the note in *Smith* v. *State of Indiana, Law. Ann. Rep.* 1918 (*D*) 690.

In the light of the reasoning of the cases referred to, we have reached the conclusion that the trial judge did not err in refusing to direct a verdict for the defendants, nor in charging the jury that though the alcohol was contraband, and was illegally possessed by the plaintiffs in error, nevertheless, it could be the subject of larceny.

As to the second ground of appeal we are of the opinion that the trial judge erred in directing the indictment to be amended by striking from it the name of the person found by the grand jury to be the owner of the alcohol, and substituting for such person the name of another.

It is elementary law, that one of the essentials of a valid indictment for larceny is, that the name of the owner of the property alleged to be stolen should be stated, and in case the name of the owner is unknown that that fact should be set forth in the indictment. It is also a matter of settled practice that when a grand jury returns to the court with indictments, a part of the formula, upon receiving the bills is: "you are content the court shall amend the matter of form, altering no matter of substance without your privity," &c.

It is clear to us, that it cannot be said with any show of reason that the allegation in an indictment for larceny that A is the owner of property alleged to have been stolen by B, is not a fundamental and essential requirement in order to constitute such indictment for larceny a valid one. All the cases at common law, from the earliest period, and the decisions of the courts of this and sister states, up to the present

time, are in accord in that respect. There can be no concep‑
tion of the crime of larceny without ownership of the property
alleged to have been stolen, being in someone. It is, therefore,
quite clear that the allegation of ownership in an indictment
is a matter of substance, and not of form.

By paragraph 9, article 1, of the constitution of this state,
it is declared: "No person shall be held to answer for a crimi‑
nal offense, unless on a presentment or indictment of a grand
jury" * * * by paragraph 8, it is declared: "In all
criminal prosecutions the accused shall have the right to a
speedy and public trial by an impartial jury; to be informed
of the nature and cause of the accusation," &c.

By section 34 of the Criminal Procedure act (2 *Comp. Stat.*,
*p.* 1831), it is provided, *inter alia*, that whenever upon the
trial of an indictment there shall appear to be any variance
between the statement therein and the evidence offered in
proof thereof, or in the ownership of any property, matter or
thing named or described therein, it shall be lawful for the
court before which trial shall be had, if it shall consider such
variance not material to the merits of the case, and that the
defendant cannot be prejudiced thereby in his defense on such
merits, to order such indictment to be amended according to
the proof, &c.

The constitutionality of section 34 was attempted to be
tested in *State* v. *Ham,* 65 *N. J. L.* 465, on a motion to quash
an indictment, and Mr. Justice Dixon, who delivered the
opinion of this court, said: "Whether this statutory pro‑
vision is constitutional; whether it is applicable to a case like
the present, and whether this order to amend was made at a
proper time, are questions about which there is a fair ground
for a difference of opinion." The court refused to consider
the questions raised upon the motion to quash, leaving the
defendant to a demurrer, or motion in arrest of judgment, or
writ of error.

The case was then tried and the defendant convicted and
it came again before this court by writ of error, where the
application of section 34 to the amendment made in that
case was considered. Chief Justice Gummere, after reciting

part of the section referred to, in *State* v. *Ham, 72 N. J. L.*
(at *p.* 5), said: "It will be perceived that the right to direct
an amendment of the character specified in the statute is
limited to those cases in which the variance is not material
to the merits." In that case, the amendment made was by
substituting the words, "City of Asbury Park," in the place
and stead of the words, "Township of Neptune." Both of
these municipalities were in Monmouth county. The learned
chief justice further said (at *p.* 6), "to permit an amendment
by substituting another place for that specified by the grand
jury is to permit the substitution of another offense."

By parity of reasoning the amendment made in the instant
case substituted another offense for the one charged in the
indictment. The plaintiffs in error were called upon to an-
swer an indictment which was not found by the grand jury.
Ownership of the property alleged to have been stolen clearly
relates to the merits of the case.

In *State* v. *Startup, 39 N. J. L.* 423, Mr. Justice Scudder,
delivering the opinion of this court, said (at *p.* 432) : "And
it is plain that the legislature cannot constitutionally author-
ize an amendment in substance, which will change an indict-
ment found by a grand jury so as to substitute one crime for
another charged therein; nor if the indictment fails to set
out any crime, can the court so amend it so as to charge the
crime which it is supposed they intended."

"The object of the constitution is, that a man shall not be
harassed with a public accusation and trial until a grand jury
have passed upon the probability, and the degree of crimi-
nality. Without his consent the court can permit no allega-
tion of crime to be made against him which the grand jury
have not presented."

Now, it is conceded, and it cannot very well be successfully
controverted, in view of the unbroken line of authorities, that
an essential element of a valid indictment for larceny is, that
the name of the owner of the stolen goods shall be stated in
the indictment, unless such name is unknown to the grand
jurors, and if that be so, the indictment shall allege that fact,
it follows, as a logical sequence, that an indictment cannot

be amended, by the court, if it appears that the person named therein was not the owner of the goods alleged to have been stolen by the accused, by substituting the name of another person, without practically subjecting an accused to a trial for a crime for which he does not stand indicted, by a grand jury.

This case is controlled, so far as the power of the court to amend an indictment is concerned, by the case of *State* v. *Ham, supra,* approved in *State* v. *Sing Lee* (*Court of Errors and Appeals*), 94 *N. J. L.* 266.

Tested by the reasoning of the court in State *v.* Ham, it is manifest that the amendment allowed by the trial judge was in violation of the constitutional right of the plaintiffs in error, to be tried upon the indictment for the crime charged, as found by the grand jury, which right, according to the record, was denied them, and therefore the judgment is reversed.