STATE OF NEW JERSEY, DEFENDANT IN ERROR, v.
JOSEPH J. RUSNAK, PLAINTIFF IN ERROR.

Argued February 16, 1931—Decided May 18, 1931.

For the plaintiff in error, *Alexander Simpson* and *Mortimer Neuman.*

For the defendant in error, *John Drewen,* prosecutor of the pleas.

The opinion of the court was delivered by

TRENCHARD, J. The plaintiff in error (hereinafter called the defendant), was convicted of murder in the first degree, and was sentenced to death. The case is now up for review on bills of exception and on specifications of causes for reversal on the entire record of the proceedings had upon the trial under section 136 of the Criminal Procedure act. (*Comp. Stat., p.* 1863.)

The state's case, as exhibited by its proofs at the trial, was this: The decedent, Stanley Zendarski, was a policeman in Bayonne. He was killed at or about one-thirty A. M., July 4th, 1930. In his company at the time was his fellow officer, Edward Hanak. Both were in uniform and on duty. They were in the act of leaving a saloon. There was an electric light in front. Near the saloon was a patrol box to which

the policemen resorted hourly. Hanak had entered the saloon for the purpose of using the toilet. When he left the toilet he saw his fellow officer, the decedent, standing near the doorway opening on the street. Decedent motioned Hanak to come to him. He then whispered to his fellow officer, "the kid from New street is going to get me," and immediately the two policemen passed through the doorway into the street, the decedent first and his fellow officer immediately behind him. Their revolvers were in their holsters and their blouses were buttoned over them. The instant that decedent passed through the doorway, the defendant, from a position near the curb, about eight feet from the two policemen, began firing from a revolver directly at the decedent, firing five or six shots. Decedent was fatally wounded and fell, and died within an hour. Defendant backed towards the centre of the street, firing as he went, and then turned and ran. Hanak, the other officer, was shot in the left ankle. Both officers, after they had been wounded, fired one or two shots at the defendant while the latter was in flight and after he had emptied his revolver at decedent. Hanak then limped to the street and jumped upon the running board of a passing automobile and tried to overtake the defendant, but was obliged to give up the chase by reason of exhaustion, and he was taken to the hospital. Other citizens saw defendant running away, with his hand on his hip. One yelled "there he goes," and then defendant threw a shining object over a fence where it was heard to fall, and upon search by the police and others, the revolver, with six empty shells freshly discharged, was found where it had been thrown, which revolver was afterwards identified by the defendant as his. Promptly after the shooting numerous citizens and policemen arrived on the scene and in the immediate neighborhood, and within an hour and a half the police arrested the defendant at his home where he lived with his parents and two grown brothers a few blocks from the scene of the killing. At that time the defendant was twenty-four years old and unmarried. He was well known to the police as "the kid from New street," but his real name was unknown, he having concealed it from

the police. Decedent had "frisked" the defendant late at night on the streets more than once, and two months before the killing had arrested him. At that time he gave a false name. On the latter occasion defendant asked decedent, in the presence of three other officers, to "let him go." The officer refused, whereupon the defendant said to the decedent, "all right; I will get you for this." When the defendant was arrested at his home an hour and a half after the killing, his father interfered, and the defendant said, "if you's lay a hand on my father you's will get the same as they got." Without more ado defendant was taken to the police station. At the time of the arrest the police searched defendant's home and found a revolver, not the one used in the killing. They found in his pockets twenty loaded cartridges of a size and caliber to fit the revolver thrown away by the defendant. The defendant, when questioned by the police, at first denied the killing; but the same morning he requested to be taken to Hanak's bedside at the hospital. He was there identified by Hanak as the man who did the shooting. Defendant there said, "I didn't mean to shoot you, Eddie." He was asked by the police why he shot decedent. He replied, "you know what he called me." He was asked, "what did he call you?" He replied, "he called me a son-of-a-bitch." He was asked, "is that the reason you shot him?" and he did not answer. The defendant then asked, "how is Stanley?" The police said, "we will show you Stanley" and they took him to the morgue and showed him Stanley's dead body. They asked him if he did it and he did not answer. They took the defendant back to police headquarters. Then the defendant asked for a drink of water and a cigarette, and he got them. He then said, "all right; I will tell you." Thereupon the defendant made and signed the written confession which was admitted in evidence. Therein he said that he wanted "to get even" with decedent because the latter had treated him so "ruff" when arrested two months before; he told that he had frequently said that he would "get even" with decedent; he told of the formation of his plan and how he executed it; he said that he fired six shots at the decedent, emptying his

revolver; he said that he wanted "to shoot Stanley in the leg so as to scare him, so he would keep away from me;" he identified the revolver which he used in the killing; he told how and when he got it and where he got the cartridges; he told how, after firing, he turned and ran and threw the empty revolver over the fence at the very spot where it was found.

Over against all this clear, cogent and convincing proof by the state we have the testimony of the defendant at the trial. He testified that he left his home about nine P. M. and returned "about one-twenty A. M.;" that he had no pistol and did not fire the fatal shots. He admitted, however, that early in the night decedent "had an argument" with defendant's friend, who was the accompanying defendant, and chased his friend out of the saloon where the shooting afterwards occurred; he admitted that he had "no love" for the decedent; he admitted that he was on the streets or in saloons from nine P. M. until about one-twenty A. M.; he admitted that he was in front of the saloon where the shooting occurred on the early morning of July 4th, near the time of the shooting, and that from the outside he saw the decedent in the saloon; he admitted that "on occasions" he carried a revolver and that he had served a term in Sing Sing prison for abduction, and a term in the Elmira reformatory for robbery. He did not deny that at the hospital he had said, "I didn't mean to shoot you, Eddie."

We now deal with the points made by counsel for the defendant.

We think the admission of testimony that decedent said to his brother officer immediately before the shooting that "the kid from New street is going to get me," cannot result in reversal. It is unnecessary to determine whether or not that statement was a part of the *res gestae*. Its admission, if technically erroneous, was a harmless error. A judgment in a criminal case cannot be reversed for an error in law which was not, and could not have been, prejudicial to the defendant in maintaining his defense on the merits. *State* v. *Calabrese,* 107 *N. J. L.* 115; *State* v. *Yarrow,* 104 *Id.* 512;

*State* v. *Scott, Ibid.* 544. Here the other proofs, including the confession and admissions of the defendant, demonstrated beyond a reasonable doubt that the defendant was bent upon "getting" the decedent, and that he actually killed him. Clearly the error, if error it was, was harmless.

We think the admission in evidence of the revolver found by the police officers at the defendant's home cannot result in reversal.

When, about an hour and a half after the killing, the police arrested the defendant at his home to which he had immediately fled, the revolver was found hidden in a shoe in a closet in what the jury might well have found from the evidence was the defendant's room. We believe it was open to the jury to find, if they saw fit, that the defendant had carried this revolver in his quest for his victim, although he actually used another weapon. We therefore believe that the admission in evidence of the revolver was not erroneous. *State* v. *Unger,* 103 *N. J. L.* 18; *affirmed,* 104 *Id.* 448. But if its admission was technically erroneous, it was not, and could not have been, prejudicial to the defendant in maintaining his defense on the merits, since other evidence demonstrated beyond a reasonable doubt that the defendant actually shot and killed the decedent. *State* v. *Barone,* 96 *Id.* 417; *State* v. *Calania,* 102 *Id.* 569; *State* v. *Unger, supra.*

We think that the loaded cartridges taken from the defendant's clothing were properly admitted in evidence. They were found by the officers of the law in the pockets of the coat and trousers at his home an hour and a half after the killing. The evidence tended to show that the suit was worn by the defendant at the time of the killing and the cartridges were of the caliber and size to fit the revolver with which the killing was done. *State* v. *Lasler,* 71 *N. J. L.* 586; *State* v. *Hill,* 65 *Id.* 626.

The defendant next argues that the trial judge erred "in not striking from the record the purported written confession."

A sufficient answer to this contention is that the trial judge was not asked to strike the confession from the record. Cer-

tainly a reversal cannot be predicated upon the failure of the trial judge to strike from the record a confession where no motion was made to strike it out. *State* v. *Dragone,* 99 *N. J. L.* 144. It may not be amiss to say that admittedly the confession was properly received in evidence upon proof that it was voluntarily made and our examination of the entire record of the proceedings had upon trial returned with the writ of error discloses that the judge would have been quite justified in denying a motion to strike it out if such a motion had been made.

⠄ We think that there was no error in the refusal of the trial judge to exclude questions put by the state to the defendant on cross-examination.

After the defendant had admitted at the trial his prior conviction of robbery, the prosecutor of the pleas asked, "where did you commit the robbery?" He answered, "around Jamaica, Long Island." That question was proper, the rule being that after a defendant has admitted on cross-examination his prior conviction of crime it is not improper for the trial court to permit the state by further cross-examination to show such facts as would have been brought out if his conviction had been proved by the production of the record thereof. *State* v. *Merra,* 103 *N. J. L.* 361; *State* v. *Silver,* 2 *N. J. Mis. R.* 479; *affirmed,* 101 *N. J. L.* 232; *State* v. *Petrucelli,* 98 *Id.* 903. That rule plainly justified the cross-examination in question

Another question objected to when put to the defendant on cross-examination was, "where were you living at the time of this robbery in Jamaica?" That question, as well as other questions in the same connection objected to, if erroneous, were harmless in the circumstances of the present case. Harmless error cannot be availed of to defeat the result of a fair trial. *State* v. *Calabrese, supra.*

Other questions put to the defendant on cross-examination were not objected to at the trial, and no motion was made to strike out the evidence elicited, and will not lead to a reversal. *State* v. *Garton,* 102 *N. J. L.* 318.

We think that the trial judge properly allowed in evidence

proof that the defendant a short time before the killing of the decedent had said to another person: "I could bump you off now," or words to that effect, for the purpose of showing that at the time in question the defendant was armed. Whether the defendant was then armed was a fact directly in issue, and it was therefore proper for the state to contradict the defendant's denial that he had used such language on- the occasion and under the circumstances indicated to him. The state had proved that the decedent was shot and killed about one-thirty A. M. As a witness in his own behalf the defendant testified that he did not "at that hour or any hour" have a pistol. On cross-examination he was asked if he did not, in Nurge's saloon about forty minutes before and near by the place of the killing, say to one Donovan who was carrying a cash box, "I could bump you off now." Defendant denied it. It therefore was open to the state to contradict the defendant by the testimony of Donovan as it did. The matter was not a collateral matter, but related to a fact directly in issue at the trial, namely, was the defendant armed shortly before the shooting of the decedent.

We think the court did not err in allowing the state to abandon the count for manslaughter and in failing to charge the jury respecting manslaughter.

Upon the evidence there was no room for a verdict of manslaughter. In his argument counsel for the defendant rests his contention for reversal, on this point, solely upon the statement in defendant's written confession that in firing the six shots "he only meant to shoot him [decedent] in the leg." But if, for the purpose of this discussion, we assume that to be so, he was guilty of murder in the second degree, and not of manslaughter, for it is not contended, and could not be properly contended, that there was any evidence of heat of passion engendered by reasonable provocation. *State* v. *Moynihan*, 93 *N. J. L.* 253; *State* v. *Fiore*, 94 *Id.* 477.

We think that the trial judge did not err in respect to the several requests to charge.

The trial judge said that he had covered them in his charge. That was so. When, as here, requests to charge are

charged in substance, the refusal to charge them as drafted is not erroneous. *State* v. *Genese,* 102 *N. J. L.* 134.

It is also quite clear that the verdict of murder in the first degree is not against the weight of the evidence.

The judgment will be affirmed.

*For affirmance*—THE CHIEF JUSTICE, TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DALY, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, JJ.  14.

*For reversal*—None.