THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. MURRAY TAYLOR, ALIAS MURRAY BLEEFIELD,
DEFENDANT-APPELLANT.

Argued October 16, 1950—Decided October 30, 1950.

*Mr. Albert S. Gross* argued the cause for appellant.

*Prosecutor Walter G. Winne* argued the cause for respondent.

The opinion of the court was delivered by

WACHENFELD, J.   The defendant, Taylor, appeals from a judgment of conviction entered in the Bergen County Court on an indictment charging him with subornation of perjury in that, by means of threat to commit violent injury on one Charles Patti, Taylor did suborn the said Patti to commit perjury in the Bergen County Court on March 28, 1950, in a prosecution of Taylor for burglary by persuading Patti to testify that Taylor did not participate with Patti in the burglary of the Universal Food Market in Englewood on February 9, 1949.   This appeal was taken to the Superior Court, Appellate Division, and certified here on our own motion.

The Universal Food Market is a large supermarket employing some fifteen people.   On February 9th it was broken into, the safe was rifled and money was taken therefrom.   When Taylor was tried for this burglary, Patti testified unequivocally Taylor did not participate with him in that enterprise, resulting in Taylor's acquittal.

It was alleged, and there was proof, that the testimony so given was false and that Patti had been induced to commit perjury by the constant and repeated threats of physical violence by Taylor.

The evidence offered by the State is not complicated or long and a summary of it clarifies the legal issues raised.

The assistant manager of the market testified that two days before the burglary Taylor was on the premises and he had a conversation with him while standing near the safe which was subsequently burglarized.   Identification of Taylor was made at the New York police headquarters.

Patti, as a State's witness, said Taylor was part owner of certain premises in Brooklyn where Patti rented an automobile mechanic's repair shop; thus he became acquainted with Taylor; that on the afternoon of February 9th, Taylor, equipped with a screw driver, a hammer and a punch, induced Patti to drive him from the repair shop in Brooklyn to Englewood, New Jersey, where they parked in the vicinity of the market in question. Until their arrival at Englewood, Patti did not know their destination or purpose excepting that it was unlawful. At night and after the store had closed, Patti, by means of the screw driver, broke the lock of the steel-plated back door of the premises and thereafter Taylor alone entered the market and broke into the safe. Patti received from Taylor ninety-odd dollars in cash as his share of the buglary.

Later, on February 25, 1949, Patti was apprehended in Brooklyn by the New York police authorities and ultimately, according to his version, after the application of considerable physical force, made a statement implicating Taylor in certain burglaries which were committed in the State of New Jersey. Following this, he made a statement to a New Brunswick lawyer recanting the accusation so made as against Taylor. Patti was later convicted in Monmouth and Middlesex Counties for the burglaries perpetrated there for which he had been indicted jointly with Taylor as a result of the statement made to the New York police.

After the trial in Bergen County on March 28, 1950, in which he exonerated Taylor from any participation, and while still in custody of the Bergen authorities, Patti confessed his perjury. While there, he was visited by Taylor on two occasions and on the latter visit he told Taylor of his change of attitude.

Patti's wife corroborated the relationship between the two families and testified as to certain payments made by her to Taylor through her husband. She was present on April 4, 1950, saw the defendant, Taylor, and heard him talk to her husband in the visitors' booth in the jail, although she could not relate the substance or nature of the conversation.

Michael Iacono, another State's witness, who had been friendly with Patti, accompanied Taylor and Mrs. Patti to the Bergen County Jail on April 4th, where he spoke with Patti in the visitors' booth. Taylor did not talk to Patti while he was present but, when he left, Taylor was talking to the prison guard and came out of the building about fifteen minutes later.

Millington and Graber, county detectives, were secreted in the sheriff's office at the Bergen County Jail on the 4th of April, saw Iacono, Rose Patti and Murray Taylor enter the visitors' booth and thereafter, by means of a wire apparatus and microphone, heard a conversation between the parties and particularly between Taylor and Patti in which Patti, amongst other things, said: "I just told them that you and I were on the Englewood job together. You are not going off free and I am taking the rap alone on this and you are not doing anything for me."

Robinson, a court stenographer, was present at the same time and told of transcribing the conversation which he heard over the wire apparatus. He, of course, could not identify the voices heard.

The defense was a categorical denial of the accusation made, consisting principally of the defendant's testimony as supplemented by proof of his employment since 1946.

It is asserted error was committed in permitting the cross-examination of the defendant, over objection, with respect to certain indictments and the circumstances of a former arrest; that the testimony purporting to be the conversation. between the four unidentified persons in the County Jail constituted hearsay and was erroneously admitted; and that there was no legal evidence constituting corroboration of the alleged perjury and therefore the verdict was contrary to the weight of the evidence.

Taylor on direct examination testified he had been convicted in 1935 in Pennsylvania for the crime of conspiracy and was also convicted in 1941 in New Jersey for the crime of conspiracy; that since his last conviction he had not been arrested by or been in trouble with the police.

The prosecutor then, over objection, on cross-examination was permitted to develop that he had been indicted for burglary in Middlesex County and likewise in Monmouth. He was also permitted to show that the 1941 conviction admitted by Taylor was connected with the Lindbergh case and that Taylor was convicted with one Ellis Parker.

Appellant admits that the competency and relevancy of this testimony on cross-examination might be proper to test the credibility of the appellant on the theory that the door had been opened by direct examination but nevertheless complains it was error to permit the evidence to remain in the case.

Where a defendant either on direct or cross-examination admits a prior conviction of crime, it is proper for the trial court to permit the State, by further cross-examination, to show such facts as would have been brought out if his conviction had been proved by the production of the record thereof. *State v. Rusnak,* 108 *N. J. L.* 84 (*E. & A.* 1931); *State v. Metalski,* 116 *N. J. L.* 543 (*E. & A.* 1936).

Without taking this rule into consideration, there would still be no reversible error here because the record indicates the information with reference to the Lindbergh case was volunteered by the defendant, answering a proper question: "Conspiracy to commit what crime?"

Appellant cites and relies upon *State v. Raymond,* 53 *N. J. L.* 260 (*Sup. Ct.* 1891), and *State v. DePaola,* 5 *N. J.* 1 (1950), in which many of the relevant cases on the theory submitted are reviewed at considerable length.

On the trial of an accused for a crime, it is generally not competent to prove that he committed other crimes of a like nature for the purpose of showing that the accused would be likely to commit the crime charged in the indictment. There are exceptions to this rule. See *State v. Lederman,* 112 *N. J. L.* 366 (*E. & A.* 1934); *State v. Noel,* 102 *N. J. L.* 659 (*E. & A.* 1926).

The facts in the case *sub judice* are not comparable to the situation encountered in the *DePaola case, supra.* Here the charges were not originally brought out by the State but were first mentioned in the cross-examination by the defend-

ant of the State's principal witness, Patti. The line of interrogation employed by the defendant made it quite plain to the jury that Taylor had been implicated in Monmouth and Middlesex Counties on charges of burglary and reference to it as complained of, if error, was harmless.

The defendant, having opened the door as to his conduct since the date of his conviction in 1941, gave the State the right to contradict his testimony by showing by further questioning that he had been in trouble with the authorities and had been arrested, thus denying his volunteered assertions to the contrary. These collateral issues were created and proffered by the defendant's questions and answers and the rule in the *DePaola case, supra,* did not prevent the State, under these circumstances, from showing by cross-examination the answers to be false and untrue. *State v. Barth,* 114 *N. J. L.* 112 (*E. & A.* 1935).

Detectives Millington and Graber, it is said, were permitted, over objection, to testify at length concerning a conversation amongst four persons in the visitors' booth at the Bergen County Jail without the ability to identify their voices.

▮ The record does not support this statement. No objection was made to the testimony of Graber throughout his entire examination, and although an objection was registered as to Millington's testimony, it was upon a ground totally different from the one asserted here. Questions not raised or argued below, except those of public policy and jurisdiction, need not be considered here. *Schwartz v. Rothman,* 1 *N. J.* 206 (1948); *State v. Jones,* 4 *N. J.* 207 (1950); *State v. Jones* (petition for rehearing), 4 *N. J.* 374 (1950); *Roberts Electric, Inc., v. Foundations & Excavations, Inc.,* 5 *N. J.* 426 (1950).

Aside from this rule, the contention, on its merits, has little to recommend it. It is argued that this testimony was purely hearsay, relying principally upon *Wigmore on Evidence, 3rd Ed., Vol. 2,* § 669, which holds the general rule to be that a witness is not qualified whose means of knowledge was substantially not the personal observation of his own senses but the hearsay assertion of others, except where a

person who has listened on the telephone, dictograph or the radio receiver is able to testify as to the identity of a speaker or the tenor of the utterance.

■ The record indicates that both detectives identified the voice as well as the speaker and their evidence was confined and related to the conversation between Patti and Taylor and not four persons as alleged. This, of course, was not true of Robinson, the court stenographer's testimony, whose evidence merely supplemented that of the detectives, but his recorded transcript coincided with and contained the same phrases and expressions as were testified to by Patti, Graber and Millington and was thereby sufficiently identified although the witness could not so testify. The testimony objected to, under these circumstances, was competent and its weight and credibility were for the jury.

■ ■ Lastly, it is asserted there was no legal evidence constituting corroboration and therefore the verdict was against the weight of the evidence. *State v. Ellison*, 114 N. J. L. 237 (*Sup. Ct.* 1935). This theory was advanced in anticipation that the testimony of the county detectives would be determined to be incompetent. Our ruling being otherwise, the answer is evident.

Even if this testimony were eliminated, however, the market manager's identification of the defendant on the burglarized premises two days before the commission of the crime, under the circumstances narrated here and in view of the defendant's denial that he had ever been in Englewood until several weeks after the crime, was sufficient corroboration to justify the submission of the case to a jury for its determination. The result was obviously not against the weight of the evidence.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, HEHER, OLIPHANT, WACHENFELD, BURLING and ACKERSON—7.

*For reversal*—None.