| State v. Kysilka. | *84 N. J. L.* |
| --- | --- |

## THE STATE v. JOSEPH KYSILKA.

Submitted July 5, 1912—Decided June 10, 1913.

1. Upon a trial for murder a transcript of the testimony taken at the coroner's inquest, but which had not been put in evidence at the trial, was inadvertently sent into the jury room with the papers in the cause. *Held*, that, as an inspection of the transcript disclosed that it contained nothing which could have influenced the minds of the jurors in arriving at their verdict that had not been laid before them by the oral testimony of the same witnesses who had given evidence at the inquest, the defendant could not have suffered harm from its examination by the jury, and that, therefore, its presence in the jury room afforded no ground for setting aside the conviction of the defendant, the provisions of the Criminal Procedure act under which the case came up prohibiting the reversal of a judgment given upon an indictment for any error except such as should or might have prejudiced the defendant in making his defence upon the merits.

2. The refusal of an application for a new trial, in a criminal case, is not reviewable on writ of error.

3. The rule that, when a matter is stated in the presence of a person which injuriously affects his rights, his failure to deny its truth may be taken as a tacit admission of the facts stated, has no application in cases where it does not appear that the person understands the language in which the statement was made.

4. Where an eye-witness to the commission of a crime called as a witness by the state, unexpectedly testifies, inferentially, that the defendant is not the person who committed it, the state may, *solely for the purpose of neutralizing the effect of such testimony and showing that it is untrustworthy*, prove that the witness on another occasion identified him as the guilty person.

On error to Hudson Oyer and Terminer Court.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and BERGEN.

For the plaintiff in error, *Alexander Simpson*.

For the state, *Pierre P. Garven*, prosecutor of the pleas.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This writ of error brings up a conviction of the defendant of the crime of murder in the second degree, in the killing of one Steve Glaser by shooting him with a pistol.

The first ground upon which a reversal is sought is that the jury, when they retired for the purpose of considering their verdict, were permitted to take with them, among other papers, a transcript of the testimony which had been taken before the coroner's inquest when that body was inquiring into the cause of Glaser's death. Counsel for the defendant had offered at the trial a part, but not all, of that testimony, and so much of it as had not been offered should, of course, have been kept from the jury. How the entire transcript came into the jury's possession is not disclosed, but as counsel for the defendant prayed "an exception to the permitting the taking by the jury of the said paper-writing into the jury room," and the court allowed the exception as prayed and signed and sealed it, we may assume that the court considered itself responsible for the presence of the transcript in the jury room. On this assumption will the fact that the jury had before it the testimony taken at the inquest and, presumably, read it before reaching a verdict, justify a reversal of the conviction before us? The case comes up under the one hundred and thirty-sixth section of the Criminal Procedure act, and the defendant has caused to be returned with the writ of error the transcript of the testimony before the coroner. That section provides that when a review shall be had under it "no judgment given upon any indictment shall be reversed * * * for any error except such as shall or may have prejudiced the defendant in making his defence upon the merits." We have, therefore, examined that part of the testimony taken before the coroner which improperly found its way into the jury room, for the purpose of ascertaining whether its consideration by the jury might have prejudiced the defendant in maintaining his defence upon the merits, and we find nothing in it which could have had any influence upon the minds of the jury in arriving at

their verdict that was not laid before that body during the trial in the shape of oral testimony from the mouths of the same witnesses who gave evidence at the inquest. It seems to us, therefore, that the fact that this transcript by inadvertence found its way into the jury room, and was read by the jury, could not have worked harm to the defendant, and we therefore conclude that the conviction should not be set aside upon this ground.

It is further contended that the judgment under review should be reversed for the reason that, subsequent to the rendition of the verdict, a rule to show cause why a new trial should not be ordered was allowed on the application of the defendant, and that upon the return of that rule the court, after hearing argument, erroneously discharged it. It is only necessary for the purpose of disposing of this contention to refer to *State* v. *Van Slavern,* 38 *Vroom* 235, in which it was held by the Court of Errors and Appeals that "the denial by a Court of Oyer and. Terminer of a new trial in a criminal case is not reviewable under the provisions of section 136 of the Criminal Procedure act."

The only eye witness of the shooting was a little Polish boy, seven years of age, named Paul Bisan. He was called as a witness by the state, and having testified to the firing of the shot was asked by the prosecutor of the pleas who it was that did the shooting, to which the boy replied, "The man who is there"—pointing to the jail—"locked up." His examination then proceeded as follows:

"*Q.* Do you see him in the court room now?

"*A.* Yes.

"*Q.* Where is he?

"The Interpreter—He is pointing with his finger to the jail.

"*Q.* No; is the man who did the shooting here in the court room?

"[Witness leaves the chair and inspects the jury.]

"*Q.* Go see if you can find the man, Paul, look all around.

"*A.* [After a tour of the room.] Not here."

Later the court questioned the witness upon this point, and the following examination occurred:

"*Q.* Do you think you would know the man who did the shooting if you saw him?

"*A.* Yes, sir.

"*Q.* You think you would know him?

"*A.* I would know him.

"*Q.* Now just step down around the room again and see if you can find him.

"[Witness walks around the room.]

"*A.* [After returning to the chair.] No, I can't find him."

The state then proved by this witness that previous to the trial he had gone to the county jail with the court interpreter and others; that he there saw a line of men standing; that among them was the man who fired the shot; and that he looked at him and placed his hand upon him. Subsequently the state called two members of the grand jury who severally testified that during the investigation by that body of the homicide of Glaser they, together with the court interpreter and the boy Bisan, visited the county jail for the purpose of ascertaining whether he could identify the defendant as the man who did the shooting; that they had a number of the inmates of the jail lined up—among them the defendant—and told the boy (through the interpreter) to pick out the man, to place his hand on him, and that the boy put his hand on the defendant. The interpreter testified to the same effect. The testimony of these three witnesses was objected to on the ground that it was immaterial, irrelevant and incompetent, and its admission over objection is now claimed to be injurious error, requiring a reversal of the judgment before us.

The defendant is a Bohemian. There is nothing in the case to show that he understood (if he heard) the conversation between the two members of the grand jury, the interpreter and the boy, or the purpose of their visit, or the significance of the boy's action in placing his hand upon him. The rule, therefore, laid down in *Donnelly* v. *State,* 2 *Dutcher* 601, and reiterated in *State* v. *Rosa,* 43 *Vroom* 462,

·viz., that when a matter is stated in the presence of a person which injuriously affects his rights, his failure to deny its truth may be taken as a tacit admission of the facts stated, has no application, for this rule is predicated upon the assumption that the person hears and understands what is said. The testimony objected to, consequently, was not admissible upon the theory of an implied admission by the defendant.

Nor was the testimony admissible for the purpose of proving that the defendant was the man who fired the shot which killed Glaser. For such a purpose it was hearsay evidence, pure and simple.

But, although it had no probative force, as connecting the defendant with the shooting of Glaser, it was, nevertheless, we think, admissible under the principle laid down by the Court of Errors and Appeals in the late case of *State* v. *D'Adame, post p.* 386. In that case the defendant was on trial for receiving stolen goods. One of the persons who had stolen them (a boy named Knight) was on the witness-stand and was asked to point out the party to whom he and his companion had sold the goods. He pointed out a man sitting in the court room (not D'Adame) as one of the men who was present at the sale, and then stated that he did not see the other in the court room, although D'Adame was then sitting in plain view of both the witness and the jury. The state then called two police officers, each of whom testified that, after having arrested the witness and his associate in the larceny, the two prisoners took them to the house of D'Adame and there identified him as the man to whom they had sold the stolen goods. It was held that this testimony was admissible for the purpose of neutralizing, *i. e.*, discrediting the adverse effect of the unexpected failure of Knight, when testifying for the state, to identify the defendant; that the effect of that failure was practically the same as if Knight had pointed to D'Adame and said, "This is not the man;" that thereby the state had been unexpectedly placed in the position of having offered evidence to the jury that the defendant was not the man who had committed

the crime, and that it had the right, if it could do so, to neutralize the effect of such evidence by proving the self-contradictory statement of the witness to show that such evidence was untrustworthy. The proofs in the present case show that the defendant during the trial was sitting at the table back of the prosecutor, where he could readily be seen by persons occupying the witness-box. This being so the applicability of the principle laid down in the cited case on the question of the admissibility of the testimony which was objected to is apparent. If counsel had requested the court to instruct the jury as to the limited effect to be given by them to the testimony, presumably such request would have been complied with. But no such request was submitted, and as the only ground of complaint made at the trial and presented before us as a reason for reversing the judgment was that that testimony was incompetent, irrelevant and immaterial, the conviction cannot be set aside upon the ground last discussed.

The judgment under review will be affirmed.