STATE OF NEW JERSEY, PROSECUTOR, DEFENDANT IN ERROR, v. JOSEPH KYSILKA, DEFENDANT, PLAINTIFF IN ERROR.

Argued November 18, 1913—Decided March 16, 1914.

1. Evidence of prior self-contradictory statements of a witness to discredit his "surprise" testimony on a material point, is of a very dangerous character, and its admission rests in the discretion of the trial judge, depending upon whether it is or is not necessary in order to prevent a miscarriage of justice. If he thinks there is no real "surprise," and that the purpose is, or the effect will be, to procure the benefit of probative force from "hearsay" testimony, or that the injury resulting from the "surprise" is fanciful rather than real, he should refuse to admit the evidence. But if he thinks its admission necessary, it is his duty to circumscribe its natural effect by warning the jury that they may only consider it as tending to neutralize the testimony it is admitted to discredit. Citing *State* v. *D'Adame*, 55 *Vroom* 386.

2. Where the probative effect of such evidence of prior self-contradictory statements by a state witness is to establish a fact, the truth of which is subsequently admitted by the defendant himself, upon the stand, the failure of the trial judge to limit the effect of such evidence where he was not requested to do so and no exception was taken to his failure to do so, did not work any injury to the defendant and consequently is not ground for reversal.

3. A party offering the only portion admitted in evidence of the notes taken at a coroner's inquest will not be heard to complain afterwards against an inadvertent sending out with the jury of the entire volume of such notes. It was his duty to guard his own exhibit against accidental improper submission to the jury.

On error to the Supreme Court, whose opinion is reported in 55 *Vroom* 6.

For the plaintiff in error, *Julius Lichtenstein, Herbert E. Davis* and *Alexander Simpson.*

For the state, *Robert S. Hudspeth,* prosecutor of the pleas.

The opinion of the court was delivered by

WHITE, J.  The defendant was convicted of murder in the second degree. The evidence indicated that he com-

mitted the crime by shooting with a pistol one Steve Glaser
in the basement of a hotel in Hoboken, where deceased was
employed as a waiter. The only other person in the room at
the time was a little seven and a half year old Polish boy,
Paul Bisan, who testified to seeing the defendant shoot
Glaser. At the trial Bisan was asked to pick out in the
court room the man who did the shooting, and after two
trips around the room said he was not present. As a matter
of fact the defendant was sitting in plain view and but a
few feet away. The state then proved, over defendant's ob-
jection and exception, that shortly after the shooting the
boy had been taken to the jail where twelve or fifteen men,
including the defendant, had been lined up, and upon being
directed to indicate and lay his hand on the man who did the
shooting, if he was there, went down the line slowly until he
came to the defendant and then laid his hand on him and
said he was the man.

As was said by the Supreme Court in this case (55 *Vroom*
6), this evidence was admissible, not as having any pro-
bative force to connect the defendant with the shooting, but
as tending to neutralize, *i. e.,* discredit, the adverse effect of
Bisan's unexpected testimony to the contrary; citing *State*
v. *D'Adame, Id.* 386.

It is urged, however, that it was the duty of the trial
court to limit the scope of this evidence to this purpose and
to warn the jury against permitting it to have any further
effect.

In *State* v. *D'Adame, supra,* we said: "In fact, as a gen-
eral rule it may be said that a trial judge admitting evi-
dence of this character (and the admittance of such evidence
is largely discretionary with him, depending upon the par-
ticular circumstances of each case), should, in any event,
limit its force and effect to the purpose for which only it is
admissible, viz., as tending to efface or neutralize the evi-
dence which it discredits. He should also instruct the jury
* * * that they are to entirely disregard it as in any
way tending to prove the truth of the facts which it as-
serts. * * * In a case barren of other direct proof of

the facts which such contradictory statements would tend to prove, if admissible for that purpose, the absence of such instructions, *even when not requested,* might be sufficiently injurious to warrant reversal."

We feel that we cannot make this warning too emphatic. Evidence of this character is obviously extremely dangerous, and where a trial judge, in the exercise of his sound discretion, thinks its admission necessary in order to prevent a miscarriage of justice because of a "surprise" in the form of an adverse evidential statement on a material point where the party had good and sufficient reason to expect a favorable one, he should take adequate measures to prevent it from doing a much greater wrong than the one it was intended to cure.   The very fact that men in their every day experiences constantly accept and rely upon, or reject and disregard, hearsay evidence, accordingly as the circumstances may or may not, in their judgment, tend to render it dependable, makes it perfectly natural that, when submitted to them as jurors, they should, if they believe it, accept it as evidential proof of a fact which it tends to substantiate.   It is for this reason that there is linked with the discretion of the trial judge as to whether there is or is not a proper necessity for the admission of such evidence, a duty, if he does admit it, to circumscribe its natural effect to the one purpose for which only it is admissible.   If it is apparent to him that there is no actual "surprise" and that the real purpose of offering the evidence is to get the benefit of hearsay testimony as having probative force, or that the injury resulting from the "surprise" is fanciful rather than real, he should refuse to admit the evidence; but where its admission seems to him necessary in order to guard against a miscarriage of justice, he should give ample warning against its consideration by the jury except for its limited purpose.

In the present case no warning was requested and no warning was given.   Nor in fact was any objection or exception noted because of the absence of such warning.   This circumstance is in itself significant, and an examination of the facts of the case fully disclose the reason it evidently

never occurred at the time to either the counsel for the defendant or to the trial judge that any warning was necessary. This was so because the defendant himself took the stand in his own defence, and while on the stand testified to the scene in the hotel basement when, as he said, the only persons present were himself, Glaser (the man who was killed) and the little boy; and he identified the witness, Bisan, as that little boy. Defendant testified to handing his revolver to Glaser, who was handling it while defendant was eating with his back turned, and to taking it back from Glaser after hearing him exclaim "Jesus Marie!" and then going out. The boy testified that instead of handing his revolver to Glaser defendant shot him with it. The only controversy was as to what took place in that room while those three people were there. After defendant's identification of Bisan there ceased to be any question as to the identity of the defendant as the man whom Bisan testified did the shooting. He was "the man" by his own testimony. The only controversy was, Did he shoot?

Under these circumstances it is quite evident that no injury resulted from an absence of a warning as to the effect to be given the evidence of Bisan's prior self-contradictory statements. Even if the jury might have considered these statements as evidential that defendant was the man who was in that basement at the time in question, it was quite harmless, because defendant admitted he was that man.

This fact, viz., the admission by defendant that he was the man who was in the basement with Glaser and Bisan at the time, very largely disposes of defendant's other complaint, which is that the notes of testimony taken at the coroner's inquest were permitted to go out with the jury, and were injurious to the defendant, because in them some one is stated to have testified to identifying defendant as the man, thereby supplying hearsay evidence upon the important question of identity. When defendant admitted his identity on the stand the importance of this question vanished, and with it the injury complained of. Then, too, as was said by the Supreme Court, the notes of testimony contained nothing which was not testified to by the same witnesses at the trial.

But apart from this it would seem that these notes of testimony constituted one of defendant's exhibits. Parts of these notes were offered in evidence by defendant. Of course it was not proper that the unoffered parts should go before the jury, but they were all fastened together, and the only parts which were in evidence were put in by the defendant. Under these circumstances it was peculiarly defendant's duty to see that only the proper parts reached the jury. It is true the trial judge seems to have subsequently sealed a bill of exceptions to the fact (ascertained when the jury came in with their verdict) that these notes went out with the jury, but no objection was made at the time the notes were taken out, and we think it was defendant's duty to guard his own exhibits against accidental improper submission to the jury.

The judgment is affirmed.

*For affirmance* — THE CHANCELLOR, SWAYZE, TRENCH-ARD, PARKER, MINTURN, BOGERT, VREDENBURGH, CONGDON, WHITE, HEPPENHEIMER, JJ.   10.

*For reversal*—None.