61 N.J. Super. 536 (1960)
161 A.2d 552
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WALTER N. DAVIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 1960.
Decided June 3, 1960.
*538 Before Judges PRICE, SULLIVAN and FOLEY.
Mr. Albert G. Besser argued the cause for defendant-appellant.
Mr. C. William Caruso, Special Legal Assistant, argued the cause for plaintiff-respondent (Mr. Brendan T. Byrne, Essex County Prosecutor, attorney).
The opinion of the court was delivered by FOLEY, J.A.D.
This is an appeal from a judgment of conviction entered in the County Court on a jury verdict.
On April 27, 1959 the defendant was brought to trial on a two-count indictment which charged him, Milton Alexander, *539 and James D. Crudup (1) with willfully entering "the building of Joseph Barr" with intent to steal, contrary to N.J.S. 2A:94-1, and (2) with the theft of a television set, "the property of Joseph Barr," contrary to the provisions of N.J.S. 2A:119-2. Both Alexander and Crudup had entered pleas of non vult to the indictment prior to the trial.
During the cross-examination of Barr it developed that both the building and the television set were the property of J. & H. Barr Inc. The State then moved to amend the indictment in respect of the allegations of ownership of premises and the television set. This motion was resisted by defendant and the objection to the amendment was sustained by the trial court upon the authority of State v. Cohen, 105 N.J.L. 529 (Sup. Ct. 1929). Counsel for defendant then moved for a judgment of acquittal. The prosecutor expressed no opposition and the motion was granted and the jury dismissed.
The prosecutor having indicated his determination to proceed anew, defendant, after consultation with his counsel, agreed to waive indictment by the grand jury and to proceed with a trial by accusation, reserving, however, his right to plead double jeopardy. An accusation was immediately prepared which was identical with the indictment except that "J. & H. Barr Inc." was substituted for "Joseph Barr" and the street address of the building was stated. A plea of "not guilty" to both counts was entered. Counsel then moved to dismiss the accusation upon the ground that the trial of the charge set forth therein would place the defendant in double jeopardy and thus be violative of N.J. Const. 1947, Art. I, § 11, which provides:
"No person shall, after acquittal, be tried for the same offense * * *."
The motion was denied. It was renewed and again denied at the conclusion of the State's case. On April 29, 1959 defendant was found guilty on both counts of the accusation.
Defendant's first allegation of error is that the accusation *540 filed against him placed him in double jeopardy. It is undisputed that the acquittal entered in the trial of the indictment was not on the merits, but was granted solely on the grounds that there was a variance between the proof and the indictment, and that the holding in State v. Cohen, supra, would not permit an amendment of the indictment to show the true owner of the building and the stolen property.
In order to prevail on a plea of double jeopardy it is incumbent upon a defendant to show that a legal conviction was possible under the first indictment upon the facts alleged in the subsequent charge. Thus it is of focal significance here to determine whether the indictment first lodged against Davis was capable of sustaining a conviction upon the facts of this case or whether the variance between the proof and the indictment was fatal. If a fatal variance existed, the indictment would never have placed the defendant in jeopardy of the offense alleged with the result that that defense had no application to the proceedings under the subsequent accusation. See generally 1 Anderson, Wharton's Criminal Law & Procedure, § 140, p. 317 (1957). However, if it is determined that the variance was immaterial, with the result that the indictment was capable of sustaining a conviction upon the facts as they were subsequently developed, the defense may be a valid one.
Although there are decisions which adhere to the rule that a conviction is sustainable under an indictment only if the proofs developed adhere strictly to the allegations of the indictment, see, e.g., Young v. State, 185 Tenn. 596, 206 S.W.2d 805 (Sup. Ct. 1947); Winn v. State, 138 Tex. Cr. R. 202, 135 S.W.2d 118 (Crim. App. 1940); cf. State v. Wright, 339 Mo. 41, 95 S.W.2d 1159 (Sup. Ct. 1936), the weight of authority points to the view that if the proof presented substantially adheres to that outlined in the indictment, and the indictment (1) supplies sufficient information to apprise the defendant of the actual charge against him thus avoiding any possible prejudice, and *541 (2) protects him against a subsequent prosecution for the same offense, the variance will be deemed immaterial. See generally, 1 Underhill, Criminal Evidence (5th ed. 1956), § 85, pp. 139-40; 2 Anderson, Wharton's Criminal Evidence (12th ed. 1955), § 653; see, e.g., People v. Silverman, 33 Cal. App.2d 1, 92 P.2d 507 (D. Ct. App. 1939); Taulbee v. Commonwealth, 304 Ky. 551, 201 S.W.2d 723 (Ct. App. 1947); Brannon v. State, 94 Okl. Cr. 261, 234 P.2d 934 (Crim. Ct. App. 1951); cf. State v. Trunfio, 58 N.J. Super. 445 (App. Div. 1959); Evans v. State, 60 Ga. App. 597, 4 S.E.2d 502 (Ct. App. 1939); O'Brien v. State, ___ Tenn. ___, 326 S.W.2d 759 (Sup. Ct. 1959); Note, 47 Colum. L. Rev. 693 (1947).
In People v. Silverman, supra, defendant was charged with having issued a check with intent to cheat and defraud C.C. Smith and the National Newark & Essex Bank of Newark, New Jersey. At the trial it appeared that Smith was merely the cashier at the hotel in which defendant had stayed and that it was the hotel, not Smith, which suffered the loss and was defrauded. In rejecting the argument that this created a material variance, the court said:
"If the information charges the offense in such manner that the defendant is apprised of the act with which he is charged with sufficient certainty to enable him to make a defense thereto, if he is not misled by any statement contained in the information, and the transaction is so identified that the defendant, by a proper plea, may protect himself against another prosecution for the same offense, it must be held that the allegations are sufficient to sustain the conviction when an attack is made upon the ground of variance. It has been frequently held that convictions may be upheld notwithstanding the informations stated erroneous names as owners of stolen property." 92 P.2d, at page 509
In Taulbee v. Commonwealth, supra, the defendant was indicted for grand larceny by "taking, stealing and driving away the motor vehicle or car of Elmer Barker * * *." The proofs showed that although the automobile was registered in the name of Barker, it belonged to Lyons & Carnahan, *542 Barker's employer, who had entrusted the vehicle to Barker to assist him in the performance of his duties. In construing section 128 of the Criminal Code of Practice, and holding that no material variance existed the Kentucky Court of Appeals said:
"`"Section 128, Cr. Code, was intended to modify the rigorous requirements of the common law as to the description of the person or property injured. When the act can be identified, there is no danger of a defendant being put in jeopardy twice for the same offense."'
Appellant was indicted for taking a particular automobile at a particular time and place. The variance as to ownership was not material in view of the fact that the offense was described in other respects with sufficient certainty to identify the act, and the circumstances were such as not to mislead appellant in making his defense or to expose him to the danger of being again put in jeopardy for the same offense." 201 S.W.2d 724.
While New Jersey has no specific provision comparable to section 128 in its rules of practice, a similar philosophy has been noted by our courts in the recent decision of State v. Trunfio, supra, where this court, in discussing the sufficiency of an indictment which named as owner one who had merely a possessory interest (bailee) in the stolen goods, said:
"It has been pointed out that an indictment for larceny is sufficient even when it alleges the owner of the property is unknown (Cohen, supra, 105 N.J.L., at page 534). There may be larceny by one thief from another (Brown, supra), or of contraband (Cohen, supra). It is plain, therefore, that the essential element of larceny is not that the property belonged to a specific person, but rather that it was the property of someone other than the thief. 32 Am. Jur., Larceny, § 113, p. 1024 (1941). For that reason the Florida Supreme Court held in Hearn v. State of Florida, 55 So.2d 559, 561, 28 A.L.R.2d 1179, 1181 (1951) that `the names of the owners of the stolen property constitute no part of the offense. They are stated in the information primarily as a matter of description for the purpose of identification and to show ownership in a person or persons other than the accused.'" 58 N.J. Super. 448.
While the Trunfio decision turned specifically upon the issue of the sufficiency of an indictment where the party named *543 as owner holds a special interest, its effect is nonetheless felt here.
In the instant case the indictment specified: the date of the alleged offense; the city in which it was committed; the identity of the stolen property and the place from which it was taken. And we cannot overlook the facts, that defendant was apprehended at the property described in the indictment as Joseph Barr's; that Joseph Barr was the president of J. & H. Barr Inc.; and that because of his active participation in the firm, Barr was presumedly one of the custodians of the property. A consideration of the facts of the case, in light of the principles announced, impels the conclusion that the indictment was sufficient to sustain a conviction and that the variance was immaterial. The proper remedy for its correction, therefore, was by amendment. See State v. Trunfio, supra.
In general, an acquittal in a matter laid upon a sufficient indictment bars a subsequent prosecution for the same offense under another indictment or accusation. 2 Anderson, Wharton's Criminal Evidence, supra § 653. If the acquittal, however, is obtained, or the indictment quashed, on defendant's own motion it has been held that defendant is estopped from advancing any theory in support of his claim of double jeopardy which is inconsistent with the theory advanced or position taken to secure his first acquittal. See, e.g., United States v. Hunter, 123 F. Supp. 1 (D.C.D. Md. 1954); Miller v. State, 33 Ind. App. 509, 71 N.E. 248 (App. Ct. 1904); State v. Arnold, 142 Kan. 589, 50 P.2d 1008 (Sup. Ct. 1935); Commonwealth v. Campopiano, 254 Mass. 560, 150 N.E. 844 (Sup. Jud. Ct. 1926); Owens v. Abrams, 58 N.M. 682, 274 P.2d 630 (Sup. Ct. 1954), certiorari denied 348 U.S. 917, 75 S.Ct. 300, 99 L.Ed. 719 (1955); 1 Anderson, Wharton's Criminal Law & Procedure, supra, § 140, p. 316. Cf. State v. Boyles, 7 W.W. Harr. 223, 37 Del. 223, 181 A. 362 (Ct. Gen. Sess. 1935). Although there is authority supporting the opposite result, e.g., Wilson v. Commonwealth, 212 Ky. 584, 279 S.W. 988 *544 (Ct. App. 1926), the rule first stated is the better reasoned and reaches the more desirable end. In United States v. Hunter, supra, the first trial upon defendant's motion ended in a judgment of acquittal because of a variance which existed between the proofs and the indictment regarding the serial and motor numbers of a car which was allegedly transported in interstate commerce, defendant knowing it to be stolen. Defendant was reindicted and upon trial of the second indictment argued that a correct designation of these numbers was unnecessary to a conviction under the first indictment and that the variance was immaterial. The court said:
"But having successfully contended at the first trial that the difference in serial numbers was a material variance, the defendant cannot now rely on the opposite contention. A party cannot blow hot and cold in that way." 123 F. Supp., at page 2.
Although the court went on to find that the variance was material, that determination was not controlling on the issue of estoppel. Likewise, in Miller v. State, supra, in considering defendant's plea that the second proceeding constituted double jeopardy, the Appellate Court of Indiana said:
"The right to rely upon a former jeopardy may be waived, and waiver will be implied where, after jeopardy has attached, the defendant moves to quash or dismiss the indictment, and upon such motion the indictment is quashed or dismissed. In such case there may be a new prosecution, whether the indictment in the former prosecution was good or bad; and where the defendant is acquitted upon his own request, based upon the alleged ground that the indictment is defective, he will not be heard to complain on a second prosecution that he was in jeopardy under the former prosecution." 71 N.E., at pages 248-249
We do not agree with the choice of the term "waiver." However, the court's reasoning is applicable to the instant case because here also, after having secured an acquittal by urging that the variance was material, defendant's counsel completely reversed his position and, in support of his theory of double jeopardy, argued that the variance was immaterial *545 and that a valid conviction could have been obtained under the indictment. We hold he was estopped from taking this position.
Defendant also contends that the trial court was in error in permitting the arresting officers to testify over defendant's objection concerning responses by Crudup to the officers' questions materially incriminating the defendant. A factual recital is required if the weight of this argument is to be properly assayed. The proofs offered by the State disclosed that on December 7, 1958, at 5:42 A.M., radio patrol cars No. 41 and No. 43 were dispatched to 36 Hayes Street, Newark, N.J., on the advice that an attempt was being made to unlawfully enter the premises at that location. Car No. 41, manned by Patrolmen Gesualdo and Reboli, arrived at the scene within two or three minutes. Reboli was dropped off at the rear of 38 Hayes Street; Gesualdo then circled the block and came to the front of the premises. He observed immediately that the glass in an entrance door was broken and that the door was ajar. Alexander was standing on the sidewalk, and as the police car approached started to walk away. Gesualdo halted him at gun point and ordered him to raise his hands and face the building. Alexander complied. Car No. 43, occupied by Patrolmen Adelman and McGrath, then drew up. As the officers conferred briefly, Davis "stuck his head out of the door" of the building. Adelman arrested him and "placed" him against the building beside Alexander. Meanwhile, Reboli came from behind the building and he and McGrath entered it. They found that it had been ransacked. Further search revealed Crudup hiding in a closet in the bathroom. The three prisoners were then taken to the station house of the precinct where they were "slated." While there McGrath asked Crudup in the presence of Davis and Alexander what he was doing in the building. Crudup replied that at the instance of an unidentified person they had taken a television set from the building. In answer to Adelman's question of what had become of the television set, Crudup in Davis' *546 presence said that he and Davis had handed the set to Alexander through the broken door window and that Alexander had placed it in a black sedan operated by a man named Bob. Throughout these conversations Davis remained silent. The questions eliciting the conversations were objected to on the obviously unsound grounds that they were "hearsay" and that the "best evidence" would be the testimony of Crudup himself. However, since resistance to the introduction of the proof was offered, we shall treat the matter as if the objections were more pertinently elucidated.
The rule appertaining to tacit admissions in criminal cases was first announced in this State in Donnelly v. State, 26 N.J.L. 601, 613-614 (E. & A. 1857), where it was said:
"When a matter is stated in the hearing of one, which injuriously affects his rights, and he understands it, and assents to it, wholly or in part, by a reply, both are admissible in evidence; the answer, because it is the act of the party, who is presumed to have acted under the force of truth, and the statement as giving point and meaning to the action. So, also, silence, unless it be accounted for by some of the circumstances which have been specified, or by other sufficient reasons, may be taken as a tacit admission of the fact stated; because a person knowing the truth or falsity of a statement affecting his rights, made by another in his presence, under circumstances calling for a reply, will naturally deny it, if he be at liberty so to do, if he does not intend to admit it."
In State v. Kobylarz, 44 N.J. Super. 250, 257-258 (App. Div. 1957), Judge Jayne marshalled the cases which have followed the rule in varying factual situations, and it would serve no useful purpose for us to treat them again here. We are in accord with the conclusions reached by him respecting the proof required in order that silence may be regarded as an admission. The court held:
"To constitute proof of an admission by silence, it must be disclosed by evidence (1) that the statement was extra-judicial; (2) that it was incriminatory or accusative in import; (3) that it was one to which an innocent man would in the situation and surrounding circumstances naturally respond; (4) that it was *547 uttered in the presence and the hearing of the accused; (5) that he was capable of understanding the incriminatory meaning of the statement; and (6) that he was at liberty to deny or reply thereto. * * * `Where admissions are implied from silence, the trier of the facts should be doubly cautious, for in addition to the reasons that apply to oral confessions, there may be doubt whether the defendant heard and understood the statement which his silence is supposed to admit as true, and doubt whether he did not consider that he ought to remain silent until he were directly questioned.'" Id., 44 N.J. Super., at pages 259-260.
As pointed out in the recent case of State v. Butler, 32 N.J. 166, 184 (1960), the court in Kobylarz brought into serious question the admissibility of evidence of silence in the face of an accusatory statement made while the defendant is under arrest or in custody. In this connection Justice Jacobs quoted Kobylarz with approval saying:
"Judge Jayne took occasion to point out that generally no inference of guilt should be drawn from the silence of a defendant who is under arrest or in custody. He stressed the fact that `many accused persons deliberately recognize safety in silence and are more interested in protection from eventual prosecution and conviction than in preliminary protestations of innocence'; and he indicated the Appellate Division's approval of the view that the silence of a defendant who is faced with incriminatory accusations while he is under arrest or in custody would be deemed inadmissible as evidence unless the circumstances shown are such that `no explanation of his silence is reasonable other than his acquiescence in the truth of the accusations.' See 44 N.J. Super., at page 259; cf. McCormick, supra, pp. 529-531."
This appears to be a departure from prior holdings of our courts. See, e.g., State v. Landeros, 20 N.J. 76, 84 (1955), certiorari denied 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486 (1956), application for writ of habeas corpus denied 154 F. Supp. 183 (D.C.D.N.J. 1957); State v. Picciotti, 12 N.J. 205, 209-210 (1953); State v. Toohey, 6 N.J. Super. 97 (App. Div. 1950).
However, even if the evidence of incriminating statements made in the presence of Davis while he was under arrest and in custody was not admissible, the conviction *548 must be sustained since it does not appear from the entire record "that the defendant thereby suffered manifest wrong or injury." R.R. 1:5-1(a). While by his statements to the police Crudup placed Davis within the premises at 36 Hayes Street as an active participant in the crimes charged (which was denied by Davis), the State did not rely upon this evidence for conviction. As hereinabove noted, all three men were caught red-handed by the police, whose testimony was completely destructive of the proof offered by Davis that he did not enter the building and took no part in the criminal activity engaged in therein. In these circumstances it would be unrealistic to infer that Crudup's account to the police had even the slightest influence on the jury's determination of guilt.
Finally, it is urged as "plain error" under R.R. 1:5-1 that the court neglected to instruct the jury concerning the probative force of Crudup's accusatory statements, even though not requested to do so. Compare State v. Kobylarz, supra, 44 N.J. Super., at page 259, with State v. Landeros, supra, 20 N.J., at page 85. We need not discuss the distinction between these cases nor the applicability of either to the case sub judice. Our holding with respect to the inconsequential nature of Crudup's statements as they bore upon the result herein makes unnecessary a consideration of this contention.
Affirmed.