THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. CLIFFORD W. DUNPHY, DEFENDANT-APPELLANT.

Argued October 17, 1955—Decided November 7, 1955.

532

*Mr. Frank G. Schlosser* argued the cause for appellant (*Mr. William George,* attorney; *Mr. Schlosser,* of counsel).

*Mr. Chester A. Weidenburner* argued the cause for respondent (*Mr. H. Russell Morss, Jr.,* Prosecutor of Union County, attorney).

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J. Dunphy was Chief of Police of the City of Rahway. He was convicted in the Union County Court upon one count, and acquitted upon the other, of a two-count indictment charging him with willful neglect of duty in knowingly not enforcing the gambling laws. The count upon which he was convicted charged him with knowingly not enforcing the gambling laws against one Louis J. Burke, a tavern keeper in Rahway who conducted a bookmaking operation in his tavern from February to June 1952. The operation stopped when the tavern was raided on June 2 by agents of the Division of Alcoholic Beverage Control and detectives on the staff of the Union County Prosecutor. Dunphy's appeal from the conviction to the Appellate Division was certified here on our own motion.

It was the State's burden to prove Dunphy's actual knowledge of Burke's bookmaking activity, or knowledge of facts from which the jury might reasonably infer that Dunphy knew of that activity. *State v. Hoser,* 19 *N. J.* 301, 311 (1955). Burke was the State's only witness to prove this essential element of the crime. He testified that from

February to May 1952 he paid Dunphy $50 each month under circumstances which, if Burke was to be believed, justified a jury finding that the payments were Dunphy's price for permitting Burke to carry on his activities without police interference. Dunphy's defense was not only a categorical denial that he received monies from Burke but also that the raid of June 2 which put an end to Burke's activities was the result of a report by Dunphy in January to representatives of the Division of Alcoholic Beverage Control that he suspected Burke of bookmaking at the tavern and wanted the Division's aid in getting evidence to prove the fact, his reason being that he could not use Rahway police officers to get the evidence because all of them were known to Burke and that the help of undercover agents was needed.

■ Dunphy's first point is that it was error to deny a judgment of acquittal at the end of the State's case. He insists that the State's proofs did not establish the offense for which he was indicted, namely, nonfeasance in the form of criminal neglect of duty in not taking measures to bring Burke to justice, but showed an offense for which he was not indicted, namely, malfeasance in office in selling protection to Burke. There is no merit in the argument. If Dunphy accepted money from Burke to permit Burke to make book in the tavern, the proofs plainly sufficed to support a jury finding of guilt of nonfeasance, to wit, both that Dunphy knew of Burke's criminal activity and that he knowingly and willfully violated his sworn duty in not exercising his powers as chief of police to effect Burke's arrest and prosecution.

■ Dunphy next argues that the jury verdict of guilty was against the weight of the evidence. The argument is constructed upon the dispositive weight said to inhere in the defense proofs that the police force under Dunphy's leadership was under strict orders to enforce the gambling laws against all without favor and that not a single police officer was ever asked to ignore a violation of law by Burke or anyone else, that it was Dunphy who, five months earlier, with the approval of the then mayor, solicited the help of the Division of Alcoholic Beverage Control resulting in the suc-

cessful raid of June 2, and that Burke's uncorroborated story of paying graft to Dunphy, first made more than a year after Burke's arrest and following his conviction for bookmaking, "was redolent with the musk of frame-up" and its credibility wholly destroyed by the character evidence of Dunphy's official and private reputation. But we view the record as presenting merely a sharply controverted question of Burke's credibility and cannot say that it clearly and convincingly appears that the verdict based upon acceptance of the truth of Burke's testimony was the result of mistake, partiality, prejudice or passion.

It is next argued that the trial court erred in not charging Dunphy's request on Burke's credibility as an "informer-accomplice." The charge requested was to the effect that, as Burke admitted a criminal record and a long career of criminal activity, his testimony was to be scrutinized with great care, because, being tainted as he was with confessed criminality, he may have been strongly influenced in his testimony by improper motives. The trial judge refused to charge the request on the ground that the substance of it had been covered in his main charge. We have studied the charge and, although we think the subject might have been dealt with at greater length, see *State v. Spruill*, 16 *N. J.* 73 (1954), we agree that the charge adequately embraced the subject of the request.

We agree with Dunphy, however, that there must be a new trial for prejudicial error in the charge as to the effect to be given by the jury to Burke's admissions of habitual criminality in determining his credibility. When Burke took the stand for the State the prosecutor, following the practice approved in *State v. Fox*, 12 *N. J.* 132 (*App. Div.* 1951), and *State v. Costa*, 11 *N. J.* 239 (1953), immediately elicited from him the admissions that he had three times been convicted of crimes, the first time for a lottery offense in 1933 and the second and third times in 1953 for offenses arising out of the raid of June 2, that is, the state offense of practicing bookmaking at his tavern and the federal offense of being a bookmaker without obtaining the stamp required by

federal law. On cross-examination, however, he was questioned at great length, without objection from the State, as to the activities he pursued over the 25-year period beginning in 1930. He admitted that over that period he had spent most of his time in criminal pursuits related to lotteries and bookmaking, usually in Jersey City, but also in Rahway. He admitted further that his 1933 conviction had in nowise deterred him from continuing his illicit activities. Such comments as were interjected by the prosecutor in the course of the cross-examination imply that the State was satisfied that this was an entirely proper line of inquiry. And at no time was it suggested by either the prosecutor or the trial judge that the testimony should be stricken. Yet, in the charge, the jury was instructed as follows:

"Louis J. Burke, a witness for the State, testified that he was convicted of a crime on several occasions. * * * Now a person is convicted if he is found guilty by a jury, if he pleads guilty to the charge or if he pleads *non vult* to the charge, or enters any other plea which in effect is a plea of guilty. If those things happen, and he is convicted of a crime, it is evidence which pertains to his credibility as a witness. If a man takes the stand and testifies as a witness, the jurors have a right to know that he has been convicted of a crime which is to affect credibility. *If a witness has committed other crimes for which he has not been convicted, such criminal activities are not to be considered by a jury to affect the credibility. Even facts tending to show that a witness has been guilty of other collateral crimes are not to be considered for the purpose of affecting the credibility of the witness."* (Emphasis supplied)

The relevancy to the witness' credibility of conviction of a crime not involving dishonesty or false statement has been a matter of controversy. See *Report of the Supreme Court's Committee on Evidence* (1955), *Rule* 21, *p.* 42. But the New Jersey statute, *N. J. S.* 2A:81–12, allows evidence of the conviction of "any crime." Evidence of crimes of which the witness was not convicted is excluded over objection, *State v. Bossone,* 88 *N. J. L.* 45 (*Sup. Ct.* 1915), affirmed 89 *N. J. L.* 724 (*E. & A.* 1916); *State v. Quinlan,* 86 *N. J. L.* 120 (*Sup. Ct.* 1914), affirmed 87 *N. J. L.* 333 (*E. & A.* 1915); *DeLucia v. Bleha,* 5 *N. J. Misc.* 501 (*Sup.*

*Ct.* 1927); *State v. Zeek*, 120 *N. J. L.* 322 (*Sup. Ct.* 1938); *State v. Block*, 119 *N. J. L.* 277 (*Sup. Ct.* 1938), affirmed 121 *N. J. L.* 73 (*E. & A.* 1938), not because such evidence is not also relevant to the issue of the credibility of the witness but in furtherance of the policy to assure a fair and orderly trial; confusion of issues may result from cluttering the trial with controversies over minor issues, causing the fact finder to lose track of the issues to be decided in the case, and the party offering the witness may be unfairly surprised by, and find it practically impossible to meet, the testimony of impeaching witnesses as to alleged instances of such misconduct of the witness during his lifetime. *Wigmore, Evidence* (3d ed. 1940), *pp.* 536 *et seq.*

Where, however, as occurred in this case, the evidence of Burke's criminal career beyond his convictions became a part of the proofs without objection from the State, it was as much relevant evidence upon the issue of Burke's credibility as was the evidence of his convictions. The trial judge's withdrawal of the evidence from the jury's consideration was an improper assumption of, and an infringement upon, the province of the jury, as erroneous as if he had instructed the jury to disregard this or other relevant evidence as unworthy of belief. *State v. Terry*, 89 *N. J. L.* 522 (*Sup. Ct.* 1916).

It is true that no objection was taken on Dunphy's behalf to the court's charge in this regard. The judge's action was, however, plain error substantially affecting Dunphy's rights, calling upon us to exercise our power under *R. R.* 1:5–1(*a*) to notice it. The error was particularly fraught with prejudice to Dunphy whose fate turned upon the jury's acceptance or rejection of Burke's testimony.

Reversed.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.