THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. CLIFFORD W. DUNPHY, DEFENDANT-APPELLANT.

Argued February 25, 1957—Decided April 1, 1957.

*Mr. Frank G. Schlosser* argued the cause for the appellant (*Mr. William George,* attorney).

*Mr. H. Russell Morss, Jr.,* Union County Prosecutor, argued the cause for the respondent (*Mr. Cuddie E. Davidson, Jr.,* Special Assistant Counsel, on the brief).

The opinion of the court was delivered by

OLIPHANT, J. This is an appeal, certified here on our own motion before hearing in the Appellate Division, by the Chief of Police of the City of Rahway, from a judgment of conviction entered on a jury verdict in the Union County Court convicted him of knowingly not enforcing the gambling laws against one Burke, a tavern keeper in Rahway who allegedly conducted a bookmaking operation in his tavern in February and June, 1952, and this neglect of official duty was in violation of *N. J. S.* 2*A*:135–1.

The original indictment was in two counts, the second count making the same charges with respect to certain other alleged bookmaking establishments in the city. In a previous trial the appellant had been acquitted of count two of the indictment but had been convicted on count one, the count relating to Burke. That conviction was reversed by this court upon the ground that while the trial court had permitted Burke to be cross-examined upon his prior criminal activities and he had testified somewhat fully as to them, the court then charged the jury to disregard such evidence because it was not based upon a record of conviction.

This we held to be prejudicial error for the reason that the evidence of Burke's criminal career beyond his convictions had become a part of the proofs without objection from the State, and that it was as much relevant evidence on the issue of his credibility as was the evidence of his convictions. Thus the charge of the court was an improper assumption or infringement upon the province of the jury. *State v. Dunphy,* 19 *N. J.* 531, 536 (1955).

The State's case against the appellant depends on the testimony of Burke and his bartender, Gesell, who came on as a rebuttal witness. Burke's testimony was that he owned and operated the tavern in Rahway at the address named in the indictment and that he carried on bookmaking activities

there during the months of February, March, April and May 1952, and that during the same period of time he made monthly payments of $50 to the defendant-appellant; that during these periods of time he was not interfered with by the Rahway police, but that he was raided on June 2, 1952 by the prosecutor's office and agents of the Alcoholic Beverage Commission, after which he was convicted and sentenced to prison, fined $5,000, and served his time.

The appellant's defense was a complete denial of the $50 payments. He testified that he had reported the possibility of gambling in the tavern to the Alcoholic Beverage Commission and its agents had been unable to get any evidence of gambling, and further, he had specifically instructed the superior officers and patrolmen of the police department to be on the lookout for gambling and assigned one or two men specifically to watch the operation of Burke's tavern. This testimony in some details was corroborated both by the A. B. C. agents and by some of the police witnesses, but at the time the raid was made it was done over the head of the defendant-appellant and his first knowledge of it was when he received a telephone call notifying him that the raid was underway. All the police witnesses, including himself, took the position they could not get evidence on the tavern because they were too well known to the people there. The only corroboration of the payment of the $50 a month was supplied by the bartender, Gesell, who, without leaving the tavern and looking out through a narrow window, claims he saw a meeting between Burke and the defendant-appellant at which one of the payments was made.

The first point made by the appellant is that the trial court erred in restricting the cross-examination of the witness Burke. On the second trial, when the attempt was made to extend the cross-examination beyond the prior convictions of Burke for crimes, the State objected and the objection was sustained for the reasons set forth in the opinion of this court, *State v. Dunphy, supra,* 19 *N. J.,* at *page* 536. There we stated that while our statute, *N. J. S.* 2*A*:81–12, allows the evidence of the conviction of "any crime" to be

admitted, evidence of crimes of which the witness was not convicted should be excluded, not because such evidence is not relevant to the issue of credibility of the witness, but in furtherance of the policy to insure a fair and orderly trial.

Since then we have again examined this rule in *State v. Kociolek*, 23 *N. J.* 400 (1956), and there we adhered to the rule which only permits a record of conviction to be used in attacking the credibility of the witness. Burke actually admitted two or three convictions of crimes, but the complaint here is that the cross-examination was limited when counsel tried to extend it to his other many illegal activities over a long period of time, none of which resulted in his arrest or conviction.

The objection of the State to such extension of the cross-examination was sustained by the trial court on the authority of the above cited rule, but there was other evidence that was admitted as to Burke's character and misconduct that clearly diminished any possible harmful effect of such limitation of the cross-examination even if it were permissible. Then there was the testimony that Burke was blatantly bitter in his intense animosity toward the appellant; he had bitterly complained he was double crossed and that it was his purpose to see that the appellant "was destroyed" or "murdered." All of this was before the jury.

That Burke was a biased witness was amply demonstrated, yet the question of guilt or innocence of the defendant came down to one of credibility between his testimony and that of the defendant, who according to the witnesses had been an exemplary police officer and was apparently of good standing and reputation in the community.

The second point by the appellant is that the trial court erred in striking out certain answers of the witness Burke given on cross-examination. One single example will suffice to demonstrate that the ruling of the trial court was correct under the above cited principle:

"Q. Mr. Burke, my question is simply this: What was your occupation from 1929 to 1941 or '42 while you lived in Jersey City? A. I was in the lottery business.

"Mr. Weidenburner: That is objected to, sir.

The Court: Objection sustained.

Mr. Weidenburner: And may I ask that the answer be stricken and the jury instructed to disregard it?

The Court: The answer will be stricken, and the jury will be instructed to disregard it.

Mr. George: I vigorously object to the exclusion of this testimony, if the Court please."

The next point of the appellant is that the trial court erred in refusing a motion for a judgment of acquittal. The argument here is that the indictment was one for nonfeasance but that the appellant was actually tried and convicted of malfeasance, namely, the acceptance of a bribe, and that these are two entirely separate and distinct offenses. This point was adversely decided against the appellant here in our prior decision, *State v. Dunphy, supra,* 19 *N. J.,* at page 534.

A test of such a motion is whether there was any legal evidence from which a jury could draw an inference of guilt. *State v. Picciotti,* 12 *N. J.* 205 (1953); *State v. Rogers,* 19 *N. J.* 218 (1955); *State v. Kollarik,* 22 *N. J.* 558 (1956).

Appellant then argues certain exceptions to the charge of the court as delivered. But no objection or challenge was made to the charge at the trial as required by *R. R.* 1:5–1(*a*) and *R. R.* 3:7–7(*b*). We have carefully examined the whole charge and we do not find the court's comment that the jury should consider whether the appellant's testimony was "logical, reasonable or proper" to be so misleading as to be harmful error. The judge was quite clear in charging the jury that the facts should be determined by them, including the credibility to be given each of the witnesses. A single sentence cannot be extracted from the charge and construed without regard to the context of the entire charge. We find no error here. *State v. Ellrich,* 10 *N. J.* 146, 153 (1952).

The appellant again, as he did in the first case, raises the question that the charge to the jury on the rule for determining the credibility of the alleged accomplice was

not sufficiently full or strong enough in view of the character of the State's witness. Here, again, this objection was met in the decision in the prior case. Likewise, no objection was taken to the charge, and the complaint here seems to be that the charge as given was not in the exact language of the request submitted by appellant. The court is not required to charge in the specific language of such requests and if there is error it must result from a reading of the charge as given in context with the entire charge. We find no error here. *State v. Tune*, 17 *N. J.* 100 (1954).

The final point is that the verdict is against the weight of the evidence, and the argument here is that under *R. R.* 1:5–1(*a*) the conviction should be set aside when it clearly and convincingly appears that the verdict was the result of mistake, partiality, prejudice or passion. Under this point appellant makes an all-out attack on the character and credibility of the State's two witnesses, Burke and Gesell, and their records as criminals taken in conjunction with the bitter animosity of the witness, Burke, toward the appellant.

As in all such cases, the witnesses for the State are rarely citizens of high repute in their particular community. Whether they are to be believed or not is left for decision of the jury consisting of the defendant's peers; it is not within the power of an appellate tribunal to substitute its judgment in this area for that of the jury. The power of an appellate tribunal to review the findings of a jury is subject to limitations. We may not interfere with the constitutional right of trial by jury by weighing the evidence and substituting our judgment for that of the jury; nor may we set aside a verdict merely because, in our opinion, we or the jury upon the same evidence might have found otherwise. As long as the verdict of the jury rests upon testimony competent to sustain the inference of guilt, such a finding is binding on this court and our review upon appeal is aimed only to correcting injustice resulting from obvious failure by the jury to perform its function. The error in the verdict must appear to us as an "inescapable conclusion." *State v. Landeros*, 20 *N. J.* 76, 82 (1955).

18

There is testimony in this case by the appellant that is open to the inference that the defendant "dragged his feet" in the investigation of the gambling which he suspected was going on in Burke's tavern between January, 1952 and June 2, 1952. The jury did not have to take his excuse that the men under him could not find sufficient evidence to make a raid. Likewise, they could have reconciled Burke's admission of hatred and thirst for vengeance with his testimony that the accused agreed to give him immunity for a consideration and disregarded his promise after taking the money.

It is not a pleasant duty to say that the conviction of a police officer for neglect of official duty is sustainable on the testimony of characters such as Burke and Gesell. But in the enforcement of the law the prosecution must present its case through such witnesses who are available and compellable to testify. Whether the conviction should rest upon such testimony is the decision to be made by the jury and once made must be sustained if the testimony given is competent and relevant.

The judgment is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING and JACOBS—4.

*For reversal*—Justices HEHER and WEINTRAUB—2.