70 N.J. Super. 32 (1961)
174 A.2d 747
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BENJAMIN TRAVERS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 8, 1961.
Decided October 19, 1961.
*34 Before Judges GOLDMANN, FOLEY and LEWIS.
Mr. Richard M. Kohn argued the cause for defendant-appellant.
Mr. Joseph P. Merlino, Legal Assistant, argued the cause on behalf of plaintiff-respondent (Mr. Stanley E. Rutkowski, Mercer County Prosecutor, attorney).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant, Benjamin O. Travers, and William Reeves were tried together and convicted of armed robbery by the County Court of Mercer. Only Travers appeals; he was sentenced to State Prison for a term of 12 to 15 years for robbery and 3 to 5 years on the armed charge, the terms to run consecutively. He contends, through his assigned counsel, that the verdict was against the weight of the evidence, and the court erred in that: (1) it refused to charge the jury as to defendant's intention; (2) the jury was improperly charged respecting the use of the confession of his co-defendant Reeves; (3) photographic evidence was erroneously admitted; and (4) testimony was allowed concerning two unidentified photographs which the court implied in its charge might be considered by the jury.
In summary, the evidence reveals that the robbery took place at 5:30 on the evening of December 11, 1959 at the liquor store of one Thomas DeLellis, corner of Princeton and Fountain Avenues, Trenton, New Jersey. When Reeves walked into the store, brandishing a gun, he exclaimed, "Just give me the money and nobody gets hurt." Reeves was *35 identified by DeLellis, who observed that the robber was a Negro, had a goatee, a mustache, and long side-burns, and was wearing a "white or cream raincoat with a rain hat." The night following the robbery, DeLellis noticed Reeves on the street, but was unable to make contact with the police in time for his apprehension. On New Year's Eve he again saw Reeves, and this time led the police to his whereabouts where he was arrested.
In a signed statement that Reeves gave to the police authorities, he detailed his part in the robbery, and implicated the appellant, alleging that Travers furnished the gun, accompanied him to the location of the liquor store and accepted part of the stolen money. Reeves knew Travers from school days and identified him from a police photograph. Both the confessional statement and the photograph were admitted into evidence but as to Reeves only.
Subsequently, Travers was arrested and indicted for armed robbery in violation of N.J.S. 2A:141-1 and N.J.S. 2A:151-5. At first, he denied any participation in the crime but, later, he admitted his association with Reeves as an accomplice. Detective Francis X. Nagy, who was substantiated by Lieutenant Adolph G. Miller, testified:
"* * * He [Travers] told us that he did in fact supply the gun that was used by William Reeves in the commission of this crime and he did accompany him to Princeton Avenue at the time of the crime's commission and he did share in the proceeds of the crime."
At the trial, however, appellant denied that he had made such admissions; and he categorically denied that he ever had a gun, gave a gun to Reeves, was in the vicinity of the holdup, or that he participated in any way in the crime. He did, however, admit under cross-examination that he had been previously convicted of a crime, and on this point the jury was properly instructed.
James Rivers was a witness for the prosecution. He lived at 30 Fountain Avenue, about "50 yards or more" from the *36 liquor store. His brother lived in a building right behind the liquor store. Rivers stated that "about 5:30" on the night of the crime, he was proceeding from his home toward the food center on Princeton Avenue with "money in my pocket" and, as he neared the corner, he was accosted by a stranger whom he identified in open court as Travers, and that Travers had asked him, "Do you have a cigarette[?]." He further testified that he observed "one more guy was sitting on my brother's stoop," and that, when he crossed the street to enter his brother's house, the fellow on the steps inquired of him: "Do Jones or Johnson live in this building[?]." In court, Rivers identified this man as Reeves. The proffered explanation given by Rivers, under cross-examination, for his sudden decision to visit his brother was:
"Q. Something happened to you in your frame of mind and you walked across the street?
A. Yes, because they looked suspicious to me at the time. If you were walking there, you would be suspicious."
Rivers remained in his brother's house about five or ten minutes and when he left the two men had disappeared.
The corroborative testimony of James T. Woodward is telling. Woodward was with the Air Force, Military Police, at the McGuire Air Force Base; he lived at 53 Sweets Avenue, Trenton. On December 11, 1959 he left work at 4:20 P.M. and, on the way home, he discharged a passenger named Francisco Vasquez at Princeton and Fountain Avenues. The time of arrival at this destination was fixed at "between 5:15 and 5:30." When he stopped his car, the engine cut off; he had run out of gasoline. His companion had a spare can of fuel in the trunk of his automobile on the other side of the street, which he proceeded to transfer to the Woodward car. During the 10 or 15 minutes interval that Woodward was obliged to remain at this location, he observed two Negro men walking down Fountain Avenue *37 "from the front of the whiskey store toward the rear." He further testified:
"And while I was unlocking the gas tank the two fellows come by and stopped right at the rear of the car, which we were at the rear, and in the whiskey store it's a sign about so big and so high (illustrating). The two fellows peeped over the sign, looking in at the fellow inside the whiskey store."
Woodward said that he was suspicious and, after starting his vehicle, he proceeded to alarm the police and within 5 or 10 minutes he encountered a patrol car and directed it to the location of DeLellis' liquor store. The robbery had been completed when the police arrived. This time element synchronizes with the statement of DeLellis, who said that the police appeared immediately after the robbery  "as I was talking to the police department, the cruiser car was just pulling up."
The testimony of Woodward evidenced utmost caution and frankness. His memory was clear and his factual narration was convincing as to what he did observe on the eventful evening of December 11. He hesitated, however, to "pinpoint" identification of Reeves and Travers in open court as they were at that time dressed differently and clean-shaven. It is significant that his description of the outward appearances of the two strangers he saw at the site of the crime corresponded in substance to the description of the two men described and unequivocally identified by Rivers. Within minutes, there was an observation by Rivers and Woodward of two Negro men in the area of the liquor store, under circumstances that aroused suspicion. The consistency of their testimony lends weight to the verity of the testimony of Rivers, who, by reason of his face to face conversation with Travers (albeit only a crisp question, "Do you have a cigarette," and answer, "No"), was able to identify Travers before the jury, notwithstanding defendant's changed appearance. The fact that Woodward refrained from making a positive identification did not invalidate his testimony *38 in this regard. A qualified or limited identification is a circumstance that the jury may take into account with the remaining evidence in determining whether or not there is sufficient proof to constitute a fact question resolvable by the jury. See State v. Cerce, 22 N.J. 236, 244 (1956); State v. Smith, 32 N.J. 501, 522 (1960), certiorari denied 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961); State v. Buffa, 51 N.J. Super. 218, 235 (App. Div. 1958), affirmed 31 N.J. 378 (1960), certiorari denied 364 U.S. 916, 81 S.Ct. 279, 5 L.Ed.2d 228 (1960).
The State's case was not based solely upon circumstantial evidence. The admissions of Travers in response to the interrogations of the police officials, although subsequently denied by him, were tantamount to direct and positive evidence competent for the jury to consider and evaluate along with the issues of credibility. Apropos of the testimony of witnesses Miller and Nagy and the admissions made to them by the accused, we note the decision of our Supreme Court in State v. Kociolek, 23 N.J. 400, 421 (1957), holding that the county judge erred in refusing to charge a request that the jury "should receive, weigh and consider such evidence [out-of-court statements] with caution." A cautionary instruction as to Travers' admissions was not included in the jury charge, and the record does not reveal that counsel requested such an admonition. We do not perceive that this omission, in view of the overall factual case made out by the prosecution, is "plain error" under R.R. 1:5-1(a).
Circumstantial evidence may support a conviction. State v. Smith, supra. On a motion for acquittal the test is whether the proofs are such as would permit a jury to conclude that no reasonable hypothesis consistent with innocence may be drawn therefrom. See State v. Bulna, 46 N.J. Super. 313, 318 (App. Div. 1957), affirmed on other grounds 27 N.J. 93 (1958). In a later case before the same court, State v. Dancyger, 29 N.J. 76, 84 (1959), the evidence presented by the State was wholly circumstantial and it was there pointed out that such proofs may not only *39 be sufficient but may also be "more certain, satisfying and persuasive than direct evidence," quoting language from State v. O'Connor, 134 N.J.L. 536, 539 (Sup. Ct. 1946). In view of the State's evidence, it cannot be said that an hypothesis of innocence was "reasonably and fairly" tenable. State v. Dunphy, 24 N.J. 10, 16 (1957); State v. Donohue, 2 N.J. 381 (1949); cf. State v. Pincus, 41 N.J. Super. 454 (App. Div. 1956). The issue of guilt or innocence was properly left to the jury. State v. Boyd, 137 N.J.L. 23 (Sup. Ct. 1948), affirmed 137 N.J.L. 615 (E. & A. 1948); State v. Rogers, 19 N.J. 218, 235 (1955); State v. Buffa, supra. The sequence of events, the surrounding circumstances and the testimonial evidence persuasively rebut the presumption of appellant's innocence. The record furnishes abundant proof, direct and circumstantial, to support the jury's verdict, and should not be set aside as against the weight of the evidence except where it is clearly the result of mistake, partiality, prejudice or passion. R.R. 1:5-1(a); State v. Caporale, 16 N.J. 373, 381 (1954); State v. Corby, 47 N.J. Super. 493, 500 (1957), affirmed 28 N.J. 106 (1958).
The troublesome issue on this appeal relates to the limited instructions by the trial judge to the jury in referring to the confession of Reeves who was tried jointly with Travers. At the time the confession was admitted into evidence the jury was instructed by the court that:
"I further advise you as a matter of law, at this point, that those portions of the statement relating to Benjamin Travers, since they were made out of court they are what we call hearsay and are not binding upon the defendant Benjamin Travers because the statements were not made in his presence. I will say more about that point later."
When the jury was charged, the court said:
"In reading the statement you will observe the portions which implicate, which implicate the defendant Travers. Since the statement was taken out of court, out of court and not in the presence *40 of defendant Travers, it was not admitted as binding of the facts set forth against him. It is not admitted as binding against the defendant Travers of the facts set forth therefore against him. That was not the purpose of my admission of that portion of the statement against him. It does not have that purpose. It has another purpose which is relevant, which is relevant, and that is for you to determine whether or not the defendant Reeves is credible, believable, together with all the other testimony in the case."
Serious problems are presented in the trial of multiple defendants where a confession by one contains inculpatory statements against a co-defendant. The basic and fundamental precept is that extrajudicial declarations are admissible only against the confessor and are not to be considered evidence affecting others. Numerous texts and encyclopedic writers, in variant language but to the same effect, proclaim the prevailing rule. 20 Am. Jur., Evidence, § 493, p. 427; 22 C.J.S. Criminal Law § 820, pp. 1439, 1441; 4 Wigmore on Evidence, Extrajudicial Admissions, § 1076, p. 112; 7 Wigmore, op. cit., § 2100(d), p. 496; McCormick on Evidence, § 109 et seq., pp. 225-251; 1 Conrad, Modern Trial Evidence, § 554, p. 444. The genesis of such a cardinal safeguard is traceable to early England, during the reign of King Charles II, at the sessions at Newgate, where Thomas Tong, George Philips, Francis Stubbs, and several others, were indicted for high treason for compassing the King's death. It was in that case resolved by the judges that a confession "is only evidence against the party himself who made the confession, but cannot be made use of as evidence against any others whom on his examination he confessed to be in the treason." Kelyng, J. 18; 84 Eng. Rep. 1061 (K.B. 1664).
Appellant's contention is substantially the same as that argued in State v. Hall, 55 N.J. Super. 441 (App. Div. 1959), wherein it was urged that the jury was cautioned only that the inculpatory statements of co-defendants were not "binding" on the other defendants and that such limited instructions were reversibly insufficient and prejudicial. It was maintained that the trial judge was obliged to charge *41 the jury that the out-of-court statements by the co-defendants were not to be considered as evidence and were to be completely disregarded in connection with the determination of the guilt or innocence of a defendant other than the confessor. In that case, at page 454 of 55 N.J. Super., this court said:
"It must be admitted that the mere admonition to the effect that the statements of the co-defendants were `not binding' on Hall was not in and of itself adequately protective of his rights. The word `binding' might well be understood by jurors as indicating only that the particular evidence is not to be conclusive against the defendant of the existence of facts thereby made known to them. While the phrase has been said to exhibit due regard for the party as to whom certain evidence is inadmissible, State v. Cioffe, 128 N.J.L. 342, 351 (Sup. Ct. 1942), affirmed 130 N.J.L. 160 (E. & A. 1943), it does not in our opinion satisfy the need for a clear charge that the entire statements are to be completely disregarded and not considered in any way as proof in the case against the co-party."
Judge Freund, in writing the opinion in State v. Hall, noted that counsel did not object to the charge and that he also failed to offer any appropriate suggestions  "omissions found significant" in State v. Rios, 17 N.J. 572, 586 (1955); R.R. 3:7-7(b), 1:5-1(a). The court concluded that while such limited instructions might constitute "plain error," a reversal was not warranted under all of the particular facts and circumstances of that case.
We find in O'Regan and Schlosser, New Jersey Criminal Practice (Rev. ed. 1950), § 340, p. 650, the following:
"A confession made by one of several prisoners is evidential only against the confessor. Such a confession is binding upon only the defendant making it, and on any other defendant present and assenting when it was made.
Confessions of co-defendants are admitted at their joint trial, the court expressly instructing the jury that each confession binds only the defendant making it and such other defendants as were present and assenting thereto when the statement was made." (Emphasis supplied)
This statement needs amplification. There was a written confession by a co-indictee in State v. Underdown, 107 *42 N.J.L. 486, 490 (E. & A. 1931). In referring to the jury charge, the reviewing court said that "the word `binding' was not the full equivalent of `admissible' or `evidential,'" and also made the observation that "The use of the word `binding' was inept as a complete negation of the application of the exhibit." The lower tribunal was reversed but primarily because of an erroneous instruction implying that the truth or falsity of Underdown's defense might be considered from the contents of the confession of an accomplice. In the case of State v. Lustberg, 11 N.J. Misc. 51, 55 (Sup. Ct. 1933), the trial court expressly instructed the jury that statements "were binding only on the defendants making them and on such other defendants as were present when the statements were made." This language was not criticized on appeal as the proceedings involved the crime of conspiracy and the court found that prejudicial error had not been made in admitting the questioned statements into evidence. In State v. Dolbow, 117 N.J.L. 560, 563 (E. & A. 1937), appeal dismissed per curiam 301 U.S. 669, 57 S.Ct. 943, 81 L.Ed. 1334 (1937), statements and a confession were admitted into evidence over objections. It was there held: "It is only necessary to say that such statements were received with scrupulous care by the judge and with equal care limited in their effect as applicable only to the one making them."
Our Supreme Court recently considered this subject in State v. Murray, 33 N.J. 393, 398 (1960), and, in its opinion, used this language:
"Where two persons jointly commit a crime, it may not be feasible to take an intelligent statement from one without mentioning the other. If the reference to other defendants in a statement cannot be excised without affecting the sense thereof, the usual practice, as above noted, is to admit the entire statement with a prompt and emphatic caution to the jury as to the limited evidential effect to be given it."
citing Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). See also Krulewitch v. United *43 States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1957); accord, State v. Stanford, 90 N.J.L. 724, 725 (E. & A. 1917); State v. Rosenberg, 37 N.J. Super. 197, 203 (App. Div. 1955), certification denied 20 N.J. 303 (1956). Stated in another way by the United States Supreme Court, "* * * the trial court must be careful at the time of the admission and by its instruction[s] to make it clear that the evidence is limited as against the declarant only." Lutwak v. United States, 344 U.S. 604, 73 S.Ct. 481, 97 L.Ed. 593 (1953), rehearing denied 345 U.S. 919, 73 S.Ct. 726, 97 L.Ed. 1352 (1953). In short, incriminating evidence that is incompetent as to one of the defendants is not necessarily error if appropriate instructions, directing the jury to disregard such evidence in considering the guilt of a defendant as to whom evidence is incompetent, are given. Robinson v. United States, 93 U.S. App. D.C. 347, 210 F.2d 29 (D.C. Ct. App. 1954). As Justice Rutledge said in Blumenthal v. United States, 332 U.S. 539, 68 S.Ct. 248, 258, 92 L.Ed. 154 (1947): "* * * the risk of transference of guilt over the border of admissibility" must be "reduced to the minimum." We refer to a leading New York case, People v. Lombard, 168 N.Y.S.2d 419, 422, 4 App. Div.2d 666 (App. Div. 1957), where the court succinctly declared the responsibility of the trial court:
"Moreover, such instructions, when given, should not take the form of mere ritualistic intonations; initially they should be clear rulings which explain to the jury at the moment of their admission the reasons for the rule and impress upon them the necessity for strict adherence to the limitations imposed. Thus admonitions should be reiterated in the charge."
The confession of Reeves was obviously not evidential against appellant. The expression "not binding" upon Travers, employed by the court when the confession was admitted into evidence, and also contained in the charge to the jury, was too limited and too restricted. The trial court should have been more explicit and should have made it unmistakably certain to the jury, at the time of its *44 admission and also in the charge, that the out-of-court statement of Reeves was not admissible or evidential against his co-defendant, and that it should be disregarded and not taken into consideration in determining the guilt or innocence of Travers. Failure to make such an admonition to a jury could be prejudicial error.
Counsel for defendant orally entreated the court to make it clear to the jury that "the statements made by Reeves as to Travers had no legal effect on Travers." Unfortunately, this was coupled with the request that the court charge the jury "they must find some agreement existed between these men, conspiracy must have existed between the two of them for my client to be implicated." This the court properly refused to do, commenting that the alleged offense was not related to conspiracy and that Travers was on trial as a principal. The trial judge apparently labored under the impression that he had sufficiently cautioned the jury. Under R.R. 3:7-7(a) counsel had the right to submit a written request setting forth the law respecting this vital question on which he desired the jury to be instructed. This he did not do, and the court's attention was not called to the legal authorities reproving the use of the limited term "not binding." It should also be noted that defendant's attorney in his summation to the jury adopted this identical expression "not binding" when, in referring to Reeves' confession, he said: "The statement is not binding on Travers, as the court will explain to you."
Was reversible error committed? The decision in each case as to whether a trial below was fair or unfair, whether error was harmless or prejudicial, must of necessity depend upon the facts, the proofs adduced at the trial and the nature of the error committed. The charge must be considered in its entirety. 5 Anderson, Wharton's Criminal Law & Procedure, § 2093, p. 261 (1957); McLaughlin v. Damboldt, 100 N.J.L. 127 (E. & A. 1924). "Also verbal defects and inaccuracies will be disregarded where the instructions as a whole clearly present the issues." 1 Reid's *45 Branson, Instructions to Juries, 1960 Replacement, § 136, p. 386. The inculpatory admissions of Travers were of the same tenor and substance as the implicating comments in Reeves' confession. The evidence stripped of the confession was sufficient to sustain the verdict. We have, with scrutiny, reviewed all of the facts and the law as presented to the jury and the totality of the record below, and we cannot with conviction conclude that the rights of the defendant were substantially affected by "plain error" or that he suffered manifest wrong or injury that would justify a reversal under R.R. 1:5-1(a).
The remaining issues raised on appeal are subsidiary and without sufficient substance to warrant our dwelling upon them at length. The court adequately defined for the jury the elements of the crime for which the defendant stood trial, and the instructions given were sufficiently comprehensive, fair and understandable. State v. Butler, 27 N.J. 560 (1958), is inapplicable; there, the crime of robbery was not defined. It was within the discretion of the trial court to admit as evidential the disputed photograph. Absent a "marked abuse of discretion," its decision should not be disturbed. See State v. Wise, 19 N.J. 59, 98 (1955), and the prior decisions therein mentioned. Moreover, the court considered the photograph an integral part of Reeves' confession and treated it as such. The trial judge, in charging the jury, specifically refused to analyze or make comment upon the two photographs identified but not admitted into evidence. State v. Diamond, 84 N.J.L. 17 (Sup. Ct. 1922), is distinguishable.
Error in the verdict does not appear to be an "inescapable conclusion." State v. Landeros, 20 N.J. 76, 82 (1955), certiorari denied 351 U.S. 966, 76 S.Ct. 1025, 100 L.Ed. 1486 (1956); State v. Dunphy, supra (24 N.J., at p. 17); State v. Buffa, supra (51 N.J. Super., at page 235). For the reasons aforestated, the verdict must stand.
We affirm.